Plaintiff's Name David Arkeem Evans

Inmate No. AU6627

Address CSP-SAC A6-227

P.O. BOX 290066

Represa CA 95671

**FILED**

JUL 07 2022

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY CLERK

### IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF CALIFORNIA

David Arkeem Evans
_____
(Name of Plaintiff)

1:22-cv-0291 DAD BAM (PC)
_____
(Case Number)

vs.

Diaz, et al.,
_____

_____

_____

_____
(Names of all Defendants)

**AMENDED CIVIL RIGHTS COMPLAINT UNDER:**

☒ **42 U.S.C. 1983 (State Prisoner)**

☐ **Bivens Action [403 U.S. 388 (1971)] (Federal Prisoner)**

**RECEIVED**

JUL 07 2022

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY CLERK

**I. Previous Lawsuits (list all other previous or pending lawsuits on additional page):**

A. Have you brought any other lawsuits while a prisoner?  Yes ✓  No____

B. If your answer to A is yes, how many?  **2**

Describe previous or pending lawsuits in the space below. (If more than one, attach additional page to continue outlining all lawsuits in same format.)

1. Parties to this previous lawsuit:

Plaintiff David Evans

Defendants Struve

2. Court (if Federal Court, give name of District; if State Court, give name of County)
Eastern District Court

3. Docket Number 1:21-cv-02376-KJN    4. Assigned Judge K. Newmen

5. Disposition (Was the case dismissed? Appealed? Is it still pending?)
Settlement

6. Filing Date (approx.) _2/2019_    7. Disposition Date (approx.) _10/2020_

## II. Exhaustion of Administrative Remedies

**NOTICE:**    Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prior to filing suit, inmates are <u>required</u> to exhaust the available administrative remedy process, *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1999 (9th Cir. 2002), and neither futility nor the unavailability of money damages will excuse the failure to exhaust, *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). If the court determines that an inmate failed to exhaust prior to filing suit, the unexhausted claims will be dismissed, without prejudice. *Jones*, 549 U.S. at 223-24, 127 S.Ct. at 925-26.

    A. Is there an inmate appeal or administrative remedy process available at your institution?

    Yes __✓__    No_____

    B. Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

    Yes __✓__    No_____

    C. Is the process completed?

    Yes __✓__            If your answer is yes, briefly explain what happened at each level.

    No_____        If your answer is no, explain why not.

## III. Defendants

List each defendant's full name, official position, and place of employment and address in the spaces below. If you need additional space please provide the same information for any additional defendants on separate sheet of paper.

    A. Name _____See Complaint_____ is employed as _____See Complaint_____

        Current Address/Place of Employment _____See Complaint_____

B. Name _____See Complaint_____ is employed as _____See Complaint_____

Current Address/Place of Employment _____See Complaint_____

C. Name _____See Complaint_____ is employed as _____See Complaint_____

Current Address/Place of Employment _____See Complaint_____

D. Name _____See Complaint_____ is employed as _____See Complaint_____

Current Address/Place of Employment _____See Complaint_____

E. Name _____See Complaint_____ is employed as _____See Complaint_____

Current Address/Place of Employment _____See Complaint_____

**IV. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary. Must be in same format outlined below.)

<u>Claim 1</u>:  The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.):

_____See Complaint_____

<u>Supporting Facts</u> (Include all facts you consider important to Claim 1. State what happened clearly and in your own words.  You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 1.):

_____See Complaint_____

**Claim 2:** The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.):

See Complaint

Supporting Facts (Include all facts you consider important to Claim 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 2.):

See complaint

**V. Relief**

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statues.

See Complaint

I declare under penalty of perjury that the foregoing is true and correct.

Date: 7/1/2022    Signature of Plaintiff: _____

(Revised 4/4/14)

⑤

David Arkeem Evans

AU6627

CSP SAC A16-227

P.O. BOX 290066

Represa CA 95671




In The United States District Court

For The Eastern District of California




David Arkeem Evans                    1:22-cv-0091 DAD BAM (PC)

v.                                    Amended Civil Rights Complaint Under:

Diaz et al.,                          42 U.S.C. 1983 (State prisoner)

                                      ( Demand For Jury Trial)


## I. Introduction

1.    This is a §1983 Civil Rights Action by Plaintiff David Arkeem Evans, a state prisoner, alleging violations of his constitutional rights to be free from cruel and unusual punishment in violations of Excessive Use of Force, Failure to Intervene, inadequate medical care, and Conditions of Confinement. Plaintiff is seeking damages and injunction relief

## II. Jurisdiction

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States.

3.    Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured by Acts of Congress providing for equal rights of persons within the jurisdiction

1  of the United States.

2                           III. Parties

3  4.      Plaintiff David Evans at all times relevant to this suit was confined by

4  the California Department of Corrections and Rehabilitations hereinafter (CDCR) at

5  Kern Valley State Prison hereinafter (KVSP). Plaintiff is currently housed at

6  California State Prison - Sacramento

7  5.      Defendants: (1) Christian Pfeiffer, Warden; (2) John Martin, Correctional

8  Sergeant (3) Heather Diaz, Clinical Psychologist; (4) John Bradford, Psychologist;

9  (5) Stanley, Correctional Sergeant; (6) Ernesto Diaz, Correctional Officer; (7) Anthony

10  Correctional Officer; (8) Cristian Ramirez, Correctional Officer; (9) A. Aguilar, Correction-

11  al Officer; (10) E. Figueroa, Correctional Officer; (11) Marin, Correctional Officer

12  hereinafter (C/O), (12) W. Matthews, Lieutenant hereinafter (Lt.) All defendants

13  are employees of KVSP and are sued in their individual capacities, with the

14  exception of Defendant Pfeiffer, who is sued in his official

15

16                    IV. Exhaustion of Available Remedies

17  6.      Plaintiff exhausted his administrative remedies before filing this complaint

18

19                       V. Statement of Facts

20  7.      On January 19, 2019, Plaintiff was placed in administrative segregation

21  ("Ad-Seg") at approximately 1520 hours and placed in a Mental Health Treatment Room

22  holding cage. The unit supervisor, Defendant Sgt. Martin came into the Treatment Room

23  and asked Plaintiff about the events that brought him to Ad-Seg. Plaintiff explained

24  his suicidal ideations and safety concerns regarding his sexual orientation/identity

25  and incriminating photos being leaked on social media. Defendant Sgt. Martin shook

26  his head and laughed and called Plaintiff a "faggot" before leaving the room

27  8.      Plaintiff was taken by Defendant C/O Ernesto Diaz to be screened by

28  medical staff outside the Treatment Room. Plaintiff informed Psych. Tech. Matthews he

1    was feeling suicidal. Plaintiff was placed back in the Mental Health Treatment Room holding

2    cage and left handcuffed, as is proper protocol when an inmate is suicidal. Plaintiff began

3    banging his head on the holding cage door several times

4    9.    Without warning, asking, or ordering Plaintiff to stop, Defendant C/o E. Diaz sprayed

5    Plaintiff with his MK-9-OC pepper spray. Defendant E. Diaz left Plaintiff alone with the

6    door closed to the Treatment Room, trapping Plaintiff inside with the fumes of the

7    MK-9-OC pepper spray with no ventilation. MK-9-OC pepper spray has several effects:

8    swelling of mucous membranes, eyes, nose and throat, nasal, and sinus discharge,

9    coughing, shortness (difficulty) of breathing, involuntary eye closure/complete

10    blindness, painful burning of the skin, hyperventilation, and psychological effects

11    (fear, anxiety, and panic). see exhibit 1

12    10.    Plaintiff started choking and yelling, "I can't breathe! Help!" Being handcuffed

13    Plaintiff turned to face the back of the cage and started mule kicking the cage

14    door while continuing to yell for help

15    11.    Plaintiff could hear the treatment room door opened, and upon information and

16    belief Plaintiff was sprayed with two more cans of MK-9-OC pepper spray by both

17    Defendants C/o E. Diaz and C. Ramirez in order to subject and prolong the infliction

18    of pain and suffering

19    12.    Falsely, Defendants alleged in their incident report that Plaintiff was

20    continuing to bang his head and refusing orders to stop, so they sprayed him in

21    the "facial area", both with only a 3-second burst of MK-9-OC pepper spray.

22    Plaintiff's CDCR 7219 shows he was actually sprayed to the back of his body

23    and was saturated (drenched) with OC-spray. See exhibit 2

24    13.    Again the Treatment Room door was closed by defendants. Plaintiff could

25    hear someone in the adjacent hallway giving orders, "Let's do this the right

26    way, go grab your ~~helment~~ helmet, face, and riot shield." Upon information and

27    belief, Plaintiff has ascertained that the person giving orders to Defendant(s)

28    to perform an illegal cell extraction was the unit supervisor, Defendant Sgt.

1   Martin.

2   14.     Fearing he was about to be cell extracted, Plaintiff repositioned his

3   handcuffs from behind his back to the front of his body, sat down on the stool,

4   faced the rear of the cage, and braced himself for the attack he felt coming.

5   15.     Although Plaintiff's behavior did not warrant it, Defendants initiated a

6   brutal cell extraction. The holding cage door was opened, and upon information

7   and belief, Defendant C/O Reed rammed Plaintiff with his riot shield, utilizing

8   his body weight to pin Plaintiff to the desk, rendering Plaintiff incapable of

9   physical movement. (Defendant Reed is approx. 400 lbs.)

10   16.     Plaintiff could hear a variety of voices giving him orders to give them

11   his ankles to be shackled in leg restraints, however, Plaintiff was physically

12   unable to comply with theses orders because Defendant C/O Reed had him

13   pinned down. Plaintiff yelled as loud as he could repeatedly, "I can't move my

14   legs." Defendants responded with multiple batons and beat Plaintiff's body.

15   17.     Defendants knew Plaintiff was unable to move, due to being pinned with

16   the riot shield, yet intentionally and purposely gave Plaintiff orders to extend

17   his legs backward to be shackled, just to beat him for not being physically

18   able to comply.

19   18.     Defendants ordered Plaintiff again to give them his legs, but Plaintiff

20   could not physically comply and said so yelling, "I can't! The weight has my

21   legs pinned under the desk unable to move." Defendants continued to beat

22   Plaintiff with their batons.

23   19.     In Defendants' C/O Aguilar's report, he reported seeing Defendant

24   C/O Ramirez with his baton in his hand as he approached the Treatment Room see 3

25   20.     Finally Defendant C/O Reed moved the shield enough for Plaintiff

26   to get on his knees from the sitting position and extend his legs backward

27   to be placed in leg restraints.

28   21.     Upon information and belief, Defendant C/O E Diaz applied the leg

restraints excessively tight around Plaintiffs ankles, then Defendants C/o Diaz and C/o Ramirez grabbed Plaintiff by the chain of the shackles and violently snatched Plaintiff, dragging him out of the Treatment Room into the hallway, causing excruciating pain to Plaintiff's ankles as the shackles cut into the flesh of Plaintiffs skin.

22.    In Defendants' report they falsely report that when they allegedly let Plaintiff out of the cage for decontamination, Plaintiff rushed the riot shield. However, Plaintiff could not see from being pepper sprayed and could hardly breathe. Defendant c/o E. Diaz reported the he informed the other defendants that he witnessed Plaintiff slip his cuffs to the front of his body, meaning they would never have opened the holding cage door to escort Plaintiff in Ad-Seg without first recuffing Plaintiff see exhibit 4

23.    In the hallway, while Plaintiff was in both hand and leg restraints and blind from pepper spray, he laid there without provocation. He was brutally beaten by multiple officers, Defendants Martin, E.Diaz, A. Reed, C. Ramirez, and Marin, while Defendants C/o Aguilar and Figueroa failed to intervene. Despite Plaintiffs pleas and cries for them to stop, and there being no legitimate penological need or provocation, Defendants continued to beat Plaintiff.

24.    Plaintiff tried desperately to block the blows of blunt force delivered viciously to the face and the back of his head, but was held down as Defendants repeatedly punched him in both eyes, back of head, and entire body, kicking and stepping on him with their boots and hitting him with their batons. The brutality was relentless and lasted until Plaintiff was eventually rendered unconscious, bloody, with lacerations, contusions, and bruises all over.

25.    Upon information and belief, Defendants also Ad-Seg unit supervisor Sgt. Martin and c/os E.Diaz, C. Ramirez, A. Reed, and Marin, were personally involved in the unwarranted, unlawful, unconstitutional unnecessary and excessive

1   use of force. See Exhibit 4A

2   26.      Upon information and belief, Defendants C/O's Aguilar and

3   E. Figueroa failed to protect Plaintiff by failing to intervene as they both were

4   personally in the area (self admission per incident report) and had a reasonable

5   opportunity and duty to do so.

6   27.      Plaintiff regained consciousness as he was being re-cuffed behind his

7   back with Defendant Reed on his back using his forearms and strength across

8   Plaintiff's shoulder blades to keep Plaintiff pinned. Plaintiff was lifted to his

9   feet, but couldn't walk because the shackles were excessively tight and

10  cutting into Plaintiffs skin. The shackles had to be readjusted.

11  28.      Plaintiff was escorted to the A-Pod shower for decontamination for the

12  pepper spray. While inside the shower, Plaintiff heard defendants talking about

13  the   boot prints visible on Plaintiff's t-shirt and boxers (both white in original

14  color), and heard Defendant Martin order they be cut off.

15  29.      Plaintiff complained the water temperature was too hot to decontaminate,

16  so Defendant Martin suggested the janitor's closet for cool running water. Before

17  leaving the shower, Plaintiff requested that he be allowed to cover up because

18  of being completely nude, however, was denied.

19  30.      Plaintiff heard Defendants state, "You're a fag anyway, you should

20  like this." Plaintiff was escorted nude from A-Pod shower to the janitor's

21  closet in front of inmates and both male and female CDCR staff.

22  31.      Plaintiff asked on a Form 22 why he wasn't allowed to cover up although

23  he asked and stated he was uncomfortable, however, ~~however~~ Defendants

24  refused to reply. See exhibit 5

25  32.      This traumatized Plaintiff with immeasurable embarrassment, shame,

26  humiliation, and degradation because of his feelings and insecurities about

27  his penis and hearing people laugh and make comments made it worse. Plaintiff

28  has been diagnosed with Gender Dysphoria: Distress caused by conflict between

1   a person's gender identity and the sex the person had and/or identified as having

2   at the time of birth. This only gave Plaintiff more reason for wanting to ~~kill~~ die. See exhibit

3   33.     After being decontaminated, Plaintiff was taken to the Correctional

4   Treatment Center ("CTC") and then sent to the outside hospital for further examina-

5   tion. At the outside hospital, Plaintiff received a CT scan (concussion protocol),

6   x-rays for possible fractured ribs, stitches to close a wound over his right eye,

7   and was treated for multiple contusions to the face, scalp, facial abrasions, and

8   extremities. .see exhibit 7

9   34.     Upon re-entry back into KVSP, Plaintiff informed staff that he was still

10  having suicidal ideations and was sent back to Ad-Seg but placed on suicide

11  watch. Suicide Watch is when a Psych.Tech. sits and watches patient cell front

12  until he/she can be evaluated by a psychologist and screened for crisis bed.

13  35.    On January 20, 2019, Defendant Psychologist Heather Diaz came to

14  screen Plaintiff for suicide risk assessment. Plaintiff had first spoken with

15  Defendant Heather Diaz the morning of January 19, 2019 when he first reported

16  suicidal ideations, however, she informed Plaintiff that the crisis bed couldn't

17  help him and denied Plaintiff intervention.

18  36.    Defendant Heather Diaz asked Plaintiff, "what seems to be the problem?"

19  Plaintiff responded, "I tried to kill myself and I wanna die, I don't wanna feel

20  this pain anymore!" Defendant Heather Diaz smirked and sarcastically asked," And

21  how did that work out for you yesterday?" Defendant Heather Diaz could visibly see

22  that Plaintiff had been beaten. Plaintiff said, "I was beaten." Defendant Heather

23  Diaz denied/refused to treat Plaintiff's serious medical need of suicide prevention

24  and told Plaintiff," Stop trying and just do it, as I told you yesterday, crisis bed

25  cant help you"

26  37     Feeling helpless and hopeless and not only having been denied crisis bed

27  for attempting but encouraged by Defendant Heather Diaz, Plaintiff swallowed

28  two (2) razor blades with the intent of killing himself and was observed by the

1  Psych. tech. assigned to observe him on suicide watch. Plaintiff was then sent back

2  to the outside hospital see exhibit 8

3  38.  Defendant Heather Diaz came back to see Plaintiff and informed him

4  that swallowing razors wont do it, Plaintiff had to do something better.

5  39.  Before leaving KVSP within CTC, Plaintiff was seen by another Psychologist

6  Defendant John Bradford for another suicidal assessment. Defendant Bradford

7  informed Plaintiff that he was told by Defendant Heather Diaz that Plaintiff was

8  not suicidal, Plaintiff was just trying to get back closer to his family and

9  transferred to CSP-SAC. Plaintiff believes Defendants Heather Diaz and J. Bradford

10  think Plaintiff was trying to become EOP to be ~~forced~~ transfered, however, KVSP,

11  has an EOP program. Defendant Bradford refused to admit Plaintiff to the crisis

12  bed for suicide prevention, because Defendant Heather Diaz lied and informed

13  him Plaintiff was disrespectful to her even with two (2) razors in his stomach.

14  40.  Plaintiff was taken to the outside hospital, where he signed a waiver releasing

15  the hospital doctor of liability, because Plaintiff refused to be treated. Plaintiff was

16  hoping that the two (2) razors he ingested would kill him to end the physical and

17  emotional pain

18  41.  When Plaintiff ~~was taken~~ returned from the hospital and left CTC talking

19  with the on-call psychologist, he was again assigned to Ad-Seg.

20  42.  On January 21, 2019, at approximately 0100 hours, Plaintiff was awakened

21  by Sgt. John Doe stating," Your going to crisis bed." Upon information and belief,

22  Plaintiff was admitted to the crisis bed by the on call psychologist Dr. John Doe.

23  43.  On January 22, 2019, Plaintiff ~~could~~ requested and participated in an

24  excessive use of force interview, however, Plaintiff could only reenact the

25  incident without identifying those involved by name, because he was blinded

26  from the MK-9 or pepper spray

27  44.  On January 23, 2019, while still on crisis bed, Plaintiff was issued

28  a District Attorney referral and new lock up order (114d) for serious bodily injury

1  injury on a Peace Officer. Plaintiff was completely unaware that a Peace officer
2  broke his hand in the January 19, 2019 incident, however, Plaintiff finally had
3  a name of a defendant.

4  45.    Upon information and belief, the ASU supervisor, Defendant Sgt. Martin,
5  fractured his hand while battering Plaintiff, the fabified reports (state documents)
6  framing Plaintiff. When Plaintiff recieved the incident reports, he finally had all
7  the names of the defendants involved in their own partial admissions.
8  Defendants all either had hand or arm injuries and OC-spray on them on
9  their CDCR 7219 (indicative of offensive injuries). See exhibit 9

10  46.    While on crisis bed, Plaintiff again spoke with Defendant Heather Diaz
11  and she said, "I see you finally made it back here" as if admission to
12  crisis bed was some sort of game and that Plaintiff's suicidal ideations and
13  attempted suicide were a joke to her.

14  47.    On January 28, 2019, Plaintiff was discharged from the crisis bed and
15  rehoused back in Ad-seg, were he had been beaten and framed, causing severe
16  anxiety and fear. Plaintiff was purposely placed in cell #123, where the plumming
17  didn't work. Specifically, the sink didn't drain and feces would rice in Plaintiff's
18  sink when the adjacent cell would run his water. Plaintiff's cell smelled like sewage.
19  Plaintiff had to use his only drinking cup to scoop the sewage water out of his sink and
20  pour it into the toilet to prevent the water from overflowing onto his cell floor.

21  48.    Plaintiff asked Defendant Sgt. Stanley to move cells, however was informed
22  that Plaintiff was placed in this cell on purpose for breaking Defendant Martin's hand,
23  "Your on the shit list." Plaintiff made several requests for another cup but was denied.

24  49.    Plaintiff's clinician, Psychologist Leathers, noticed Plaintiffs' inhumane living
25  conditions and spoke with custody and tried to get Plaintiff another cup. Custody inform-
26  ed Dr. Leathers Plaintiff would get a cup, but didn't give him one. When Plaintiff
27  washed his face and brushed his teeth, the backsplash exposed Plaintiff physically
28  to sewage.

50.    Plaintiff made several request to Defendants c/o Arrozola (who worked his section 2nd watch) and c/o Aguilar (who worked his section 3rd watch), both verbally and in writing to submit work orders with plant operations to fix the plumbing or move Plaintiff from cell #123 Both Defendants Aguilar and Arrozola informed Plaintiff there were no cells available and that they had submitted work orders to fix the plumbing; however, upon information and belief, the both lied.

51.    Plaintiff submitted a request to Defendant Sgt. Stanley requesting that the plumbing be fixed, even though Sgt. Stanley had previously informed Plaintiff he was on the shit list. Defendant Sgt. Stanley to Plaintiff that he submitted a work order, however, upon information and belief, Defendant Sgt. Stanley lied.

52.    Defendant Sgt. Stanley, c/o Arrozola, and Aguilar told Plaintiff that he was getting "The Treatment" because Plaintiff was on "The shit list" for filing an excessive force complaint about the January 19, 2019 incident and Plaintiff had nothing coming so stop asking

53.    Plaintiff attempted to submit a CDCR Form 22 explaining the inhumane conditions he was being subjected to in retaliation, but Defendant c/o Aguilar refused to sign it unless Plaintiff retracted the word "retaliation" for excessive force complaint see exhibit 10

54.    Plaintiff wrote and sent a letter to Defendant Pfeiffer, Warden of KVSP, explaining the inhumane conditions, then followed-up with a CDCR Form 22. Plaintiff received no response

55.    Plaintiff on one occasion forgot to wash out the cup he used to scoop feces out of his sink, and used the contaminated cup to take medication at pill call and became sick see exhibit 11

56.    Plaintiff ~~on one occasion forgot to wash out~~ filed and submitted an Excessive Force Appeal Complaint on January 22, 2019; Appeal Log # KVSP-0-19-00289; First Level Review ("FLR") was bypassed, Second Level Review ("SLR") was granted in part on 3/8/2019; Third Level Review ("TLR") was denied on 10/15/2019 see exhibit 12

57.     On February 19, 2019, Plaintiff filed an Emergency 602 PREA Log # KVSP-0-19-00/1104, FLR was bypassed; SLR was granted in part on June 6, 2019, TLR was denied on 10/2/2019

58.     On February 21, 2019, Plaintiff filed an appeal concerning the inhumane living conditions of his confinement: FLR was denied on March 16, 2019, SLR was also denied on 6/7/2019; TLR was denied on October 11, 2019 Log # KVSP-0-19-10 729 see exhibit 13

59.     On February 27, 2019, KVSP Plant Operation came and finally fixed Plaintiffs plumbing and Plaintiff asked, "why did it take so long?" The Plant Operations worker John Doe informed Plaintiff there was never a work order submitted. Upon information and belief, Plaintiff was purposely subjected to these inhumane living conditions for approximately 31 days.

60.     In April 2019, Plaintiff requested an Olsen Review, whereupon Plaintiff discovered that, Defendant Heather Diaz had documented her reasoning for denying Plaintiff suicide intervention. Defendant Heather Diaz fabricated by attributing a statement allegedly made by Plaintiff, "I want to go to crisis bed to use the phone, there's better food, and its more light." Plaintiff never said this.

61.     Defendant Heather Diaz also lied, stating that Plaintiff told her, "Your the reason I beat up the police." Again, Plaintiff never said this. Plaintiffs CDCR 7219 shows he was the one that was beat. see exhibit 14

62.     Plaintiff filed a complaint against Defendant Heather Diaz, Log # KVSP-SC-19-000017, Institutional Level Response, Denied on 6/25/2019, Head Quarter Level Response "No Intervention" on 7/24/2019

63.     ~~Plaintiffs Block was in an~~ Plaintiff suffered and complained of blurry vision and was sent to the eye doctor. As a result of the blunt blows to the face, Plaintiff now has Traumatic Glaucoma. Plaintiff has to take eye drops and his vision can worsen. Plaintiff already received headaches from time to time, however, since the January 19th, 2019 beating has suffered headaches

1   more, lasting throughout the day. The pain becomes so unbearable that Plaintiff
2   usually cannot stand and he losses vision. Plaintiff suffers from PTSD caused
3   caused and diagnosed from the January 19th, 2019 incident and has severe panic
4   attacks, Plaintiff also has nightmares from the January 19th incident, requiring
5   medication to help him sleep. Plaintiff's left shoulder joint has been in pain
6   since the defendants stepped on it while he was on the ground. Plaintiff
7   has undergone several sessions of physical therapy, however, it has not worked.
8   Plaintiff now still suffering has and still suffers emotional injuries for the
9   anguish and psychological torture he endured in the events stated in this claim.
10  see exhibit 15

Cause of Action

11  (42 U.S.C. §1983 8th Amendment to the United States Constitution)
12  The allegations contained in paragraph 7 through 63 inclusive, are hereby
13  incorporated by reference.
14
15  64.  Defendants Martin, Reed, Diaz, Ramirez, and Marin violated Plaintiffs right
16  to be free from cruel and unusual punishment guaranteed to the Plaintiff by the Eighth
17  Amendment of the United States Constitution by their actions of intimadation, abuse, harassment
18  and other violations of law against Plaintiff
19  65.  Defendant Martin violated Plaintiffs rights to be free from cruel and unusual
20  punishment guaranteed to the Plaintiff by the Eighth Amendment of the United States
21  Constitution by participating in and directing the violations against Plaintiff, and his failure
22  to adequately supervise the correctional officers subordinate to him
23  66.  Defendants wrongful actions alleged herein are in violation to 42 U.S.C. §1983
24  because they deprived Plaintiff of rights, benifits, and privileges secured by the
25  United States Consitution
26  67.  Defendants acted under color of state law
27  68.  Defendants Knew or should have Known that their conduct, attitudes, and actions
28  created unreasonable risk of serious harm to Plaintiff

69.    The actions and conduct of Defendants, demonstrate deliberate indifference to Plaintiffs Eighth Amendment Rights

70.    As a proximate result of the defendants violations of Plaintiff right to be free from cruel and unusual punishment while at KVSP, Plaintiff has suffered, is suffering, and will continue to suffer irreparable harm

71. As a direct and foreseeable result of the defendants violations of the Eighth Amendment Plaintiff has suffered, is suffering, and will continue to suffer injuries in the form of mental distress, pain and suffering, shame, humiliation, degradation, emotional distress, embarrassment, post trumatic stress and other injuries. eye, left shoulder

72.    An actural controversy exists between Plaintiff and Defendants concerning their rights, privileges, and obligations.

73.    Defendants actions were willful, intentional, malicious, wanton, and despicable in consciouce disregard of Plaintiffs rights, entitling Plaintiff to an award of exemplary damages.


                    Second Cause of Action

        42 U.S.C. §1983 8ᵗʰ Amendment to the United States Constitution

74. The allegations contained in paragraphs 7 through 63 inclusive are hereby incorporated by reference.

75.    Defendants Aguilar and Figueroa violated Plaintiffs right to be free from cruel and unusual punishment guaranteed to the Plaintiff by the Eighth Amendment of the United States Constitution by their actions of failing to intervene and other violations of law against Plaintiff

76.    Defendants wrongful actions alleged herein are in violation of 42 U.S.C. §1983 because they have deprived Plaintiff rights, benifits, and privileges secured by the United States Constitution

77.  Defendants acted under color of state law

78.  Defendants knew or should have known that their conduct, attitudes, and

1  actions created an unreasonable risk of serious harm to Plaintiff

2  79. As a proximate result of the defendants actions of Plaintiffs right to be free

3  from cruel and unusual punishment while he was at KVSP, Plaintiff has suffered, is

4  suffering, and will continue to suffer irreparable harm

5  80. As a direct and foreseeable result of the defendants violations of the Eighth

6  Amendment, Plaintiff has suffered, is suffering, and will continue to suffer physical

7  injuries in the form of damage to his eyes, left shoulder, and other injuries

8  81. As a direct and foreseeable result of the defendants violations of the Eighth

9  Amendment Plaintiff has suffered, is suffering and will continue to suffer injuries in

10  the form of pain and suffering, shame, humiliation, degradation, emotional distress,

11  embarrassment, mental distress, post traumatic stress, and other injuries

12  82. An actural controversy exist between Plaintiff and Defendants concerning their

13  rights, privileges, and obligations

14  83. Defendants acts were willful, intentional, malicious, wanton, and despicable

15  in conscious disregard of Plaintiffs rights entitling Plaintiff to an award of examplary

16  damages.

17

18               Third Cause of Action

19       42. U.S.C. §1983  8th Amendment of the United States Constitution

20  84. The allegations contained in paragraphs 7 through 63, inclusive, are here by

21  incorporated by reference.

22  85. Defendants H. Diaz and J. Bradford violated Plaintiffs rights to be free from

23  cruel and unusual punishment guaranteed to the Plaintiff by the Eighth Amendment of

24  the United States Constitution by their actions of failure to act on their Knowledge

25  of substantial risk of serious harm of Plaintiff suicidal ideations and self harm through

26  their intimadation, abuse, harassment and other violations of law against Plaintiff.

27  86. Defendants acted under color of state law

28  87. Defendants Knew or should have known that their actions, conduct, attitudes, created

1   an unreasonable risk of serious harm to Plaintiff

2   88. The actions and conduct of defendants demonstrate deliberate indifference of

3   plaintiffs Eighth Amendment rights by knowing of and disregarding the excessive risk

4   of Plaintiff health and safety (suicidal ideations, self harm, suicide attempt) and

5   documenting false statements Plaintiff allegedly made for denial of intervention

6   89. As a proximate result of the defendants violations of Plaintiffs right to be

7   free from cruel and unsual punishment while at KVSP, Plaintiff has suffered, is

8   suffering and will continue to suffer irreparable harm

9   90. As a direct and foreseeable result of the Defendants violations of the Eighth

10  Amendment, Plaintiff has suffered, is suffering, and will continue to suffer physical

11  injuries in the form of damage to his rectum where the razor cut the anal wall

12  91. As a direct and foreseeable result of defendants violation of the Eighth

13  Amendment Plaintiff has suffered, is suffering, and will continue to suffer injuries

14  in the form of pain and suffering, emotional distress, mental distress, and other injuries

15  92. An actual controversy exist between Plaintiff and defendants concerning rights,

16  privileges, and obligations

17  93. Defendants acts were willful, intentional, malicious, wanton, and despicable

18  in conscious disregard of Plaintiffs rights, entitling Plaintiff to an award of exemplary

19  damages

20

21                    Fourth Cause of Action

22      42 U.S.C. §1983 8ᵗʰ Amendment of the United States Constitution

23  94. The allegations contained in paragraphs 7 through 63, inclusive, are hereby

24  incorporated by reference

25  95. Defendants Stanley, Aguilar, and Arrozola violated Plaintiffs right to be free

26  from cruel and unusual punishment guaranteed to the Plaintiff by the Eighth Amendment

27  of the United States Constitution by their subjection to inhumane living conditions

28  in retaliation of Plaintiff filing a excessive force complaint.

96.  Defendants Stanley, Aguilar, Arrozola violated Plaintiffs right to be free from cruel and unusual punishment guaranteed to the Plaintiff by the Eighth Amendment of the United States Constitution by their failure to respond to Plaintiffs inhumane living conditions out of retaliation even thought they were aware that the living condition had a substantial risk of causing harm.

97.  Defendants wrongful actions alleged herein are in violation of 42 U.S.C. § 1983 because the ehave deprived Plaintiff of rights, benifits, and privileges secured by the United States Constitution

98.  Defendants acted under color of state law

99.  Defendants knew or should have known that their conduct, attitudes, actions, and failure to act created an unreasonable and unnecessary risk of serious harm to Plaintiff

100.  The actions and conduct of defendants demonstrate deliberate indifference to Plaintiffs Eighth Amendment rights

101.  As a proximate result of the defendants violations of Plaintiff right to be free from cruel and unusual punishment while at KVSP, Plaintiff has suffered, is suffering, and will continue to suffer irreparable harm

102.  As a direct and foreseeable result of the defendants violations of the Eighth Amendment, Plaintiff has suffered, is suffering, and will continue to suffer injuries in the form of fever, diarrea, dizziness, sleep deprivation, PTSD, and other injuries

103.  As a direct and foreseeable result of defendants violations of the Eighth Amendment, Plaintiff has suffered, is suffering, and will continue to suffer injuries in the form of pain and suffering, shame, humiliation, degradation, fear, emotional distress, severe mental distress and other injuries

104  An actual controversy exist between Plaintiff and defendants concerning their rights, privileges, and obligations

105.  Defendants acts were willful, intentional, malicious, sadistic, wanton, and

1  clearly despicable in conscious disregard of Plaintiffs most basic and fundamental

2  rights, entitling Plaintiff to an award of great examplary damages

3

4                    Fifth Cause of Action

5     42. U.S.C. §1983  8th Amendment of the United States Constitution

6  106.  The allegations contained in paragraphs 7 through 63, inclusive, are hereby

7  incorporated by reference reference

8  107.  Defendants Pfeiffer and Defendant Matthews violated Plaintiffs right to be free from

9  cruel and unusual punishment guaranteed to the Plaintiff by the United States Constitution

10  Eighth Amendment by their failure to adequately train and supervise staff dealing with

11  inmates in a mental health crisis; discipline, monitor, and evaluate officers in the use of

12  force; refusal to adequately investigate civilian complaints; and instructing officers to

13  make false statements.

14  108.  Defendant Pfeiffer is the Warden at KVSP and it's Chief Executive Officer, and

15  responsible for the custody, treatment, training and discipline of all inmates under his

16  charge per Title 15 3380(a). Defendants Matthews is a Correctional Lieutenant who is

17  responsible for training and supervising subordinates.

18  109.  Defendants violated Plaintiffs right to be free from cruel and unusual

19  punishment guaranteed to the Plaintiff by the Eighth Amendment of the United

20  States Constitution by their subjection to inhumane conditions and the excessive

21  force specifically being pepper sprayed as a prevention to stop hitting Plaintiffs head.

22  110.  Defendants violated Plaintiffs right to be free from cruel and unusual punishment

23  guaranteed to Plaintiff by the Eighth Amendment of the United States Constitution by

24  their failure to respond to Plaintiffs inhumane conditions and having a policy that

25  encouraged officers to spray inmates engaging in self harm with a weapon, had a

26  substantial risk of causing harm

27  111.  Defendants wrongful actions alleged herein are in violation of 42 U.S.C. §1983

28  because they have deprived Plaintiff rights, benifits, and privileges secured by the

1   United States Constitution

2   112.   Defendants acted under color of state law

3   113.  Defendants both being superviours (i.e. Lt. & Warden). Knew or should have

4   Known of the policy and inhumane conditions and that their conduct, attitudes,

5   actions, and failure to act created an unreasonable and unnecessary risk of serious

6   harm to Plaintiff

7   114.  The actions and conduct of defendants demonstrate deliberate indifference

8   to Plaintiffs Eighth Amendment rights

9   115.  As a proximate result of the defendants violations of Plaintiff right to be

10  free from cruel and unusual punishment while at KVSP, Plaintiff has suffered, is

11  suffering, and will continue to suffer irreparable harm

12  116.  As a direct and foreseeable result of the defendants violations of

13  the Eighth Amendment, Plaintiff has suffered, is suffering, and will continue to

14  suffer injuries in the form of damage to his eyes, left shoulder, fever, diarreah,

15  dizziness, sleep deprivation, PTSD, and other injuries

16  117.  As a direct and foreseeable result of defendants violations of the Eighth

17  Amendment, Plaintiff suffered, is suffering, and will continue to suffer injuries

18  in the form of pain and suffering, shame, humiliation, degradation, fear,

19  emotional distress, severe mental distress and other injuries

20  118.  An actual controversy exist between Plaintiff and defendants

21  concerning their rights, privileges, and obligations

22  119.  Defendants acts were willful, intentional, malicious, sadistic,

23  and clearly despicable, in conscious disregard of Plaintiffs most basic fundamental

24  rights, entitling Plaintiff to an award of examplary damages

25

26                        Prayer For Relief

27  WHEREFORE, Plaintiff request the court grant relief as follows:

28        A) Issue a declaratory judgment stating that;

1. Defendant Pfeiffer is the Warden or superintendent of KVSP and that his role is the chief executive officer of that institution, and he is responsible for the custody, treatment, training and discipline of all inmates under his charge?

2. Each institution head shall ensure that all employees whose assignments routinely involve inmate contact are trained to recognize signs and symptoms associated with suicide risk, the appropriate to be followed in response to emergency situations resulting from self-injurious or suicidal actions.

3. Every employee, regardless of his or her role/assignment, is responsible for the safe custody of the inmates confined in the institutions of the department

4. Unnecessary Force is the use of force when none is required or appropriate and that Excessive Force is the use of more force that is objectively reasonable to accomplish a lawful purpose

5. That Defendant Matthews was the Incident Commander and was the second line supervisor responsible for the area where an incident occurs or an allegation of excessive or unnecessary force is recieved.

B) Issue an injunction ordering defendant Warden Christian Pfeiffer to:

1. Re-train defendants on how to handle inmates dealing with mental health crisis specifically suicidal ideations, self-harm, and attempted suicides.

2. Fire Defendants: John Martin, Anthony Reed, Christian Ramirez, Ernesto Diaz and Marin from CDCR, and never allow either the opportunity to work in the CDCR ever again

3. Fire Defendants Heather Diaz and John Bradford from CDCR and never allow them to practice psychology or anything else in the CDCR or re-apply ever again

C) Award compensatory damages in the following amounts:

1. $800,000 jointly and severally against defendants Martin, Reed, E. Diaz, Ramirez, and Mann for the psysical and emotional injuries sustained as a result of plaintiffs beating

2. $100,000 jointly and severally against defendants Aguilar and Figueroa for failing to intervene resulting in physical and emotional injuries sustained as a result of Plaintiff being beaten

3. $100,000 jointly and severally against defendants Aguilar, Stanley, and Arrozola for the physical and emotional injuries sustained as a result of Plaintiffs subjection to inhumane living conditions and getting sick

4. $50,000 jointly and severally against defendants H. Diaz and John Bradford for the physical and emotional injury resulting from the failure to provide adequate mental health care to the plaintiff

5. $25,000 jointly and severally against defendants Pfeiffer and Matthews for the physical and emotional injuries sustained as a result of Plaintiffs inhumane living conditions and policy requiring officers to pepper spray inmate engaging in self harm

D) Award punitive damages in the following amounts

1. $25,000 each against Stanley, Arrozola, Figueroa, and Aguilar

2. $50,000 each against defendants E. Diaz, Ramirez, Reed, Marin

3. $75,000 against defendant Martin

4. $25,000 each against defendants H. Diaz and J. Bradford

5. $20,000 each against defendants Pfeiffer and Matthews

E) 1. Award Plaintiff the cost of suit and reasonable attorneys fees, and

2. Grant Plaintiff such other relief as the court just and proper

Verification

Pursuant to 28 U.S.C § 1746, I David Evans, hereby declare and verify under penalty of perjury under the laws of the United States of America, that I have read the foregoing and that it is all true and correct to the best of my knowledge.

7/1/2022                                    David Evans

Respectfully Submitted,

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

David Arkeem Evans

v.

Diaz et al.,

Case Number: 1;22-CV-0091 DAD BAM

PROOF OF SERVICE

I hereby certify that on _July 4th, 2022_, I served a copy

of the attached _Amended Civil Rights Complaint under 42 U.S.C.§1983 (state prisoner)_

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter

listed, by depositing said envelope in the United States Mail at

CSP-Sacramento
P.O. Box 290066    Folsom
Represa CA 95671

(List Name and Address of Each
Defendant or Attorney Served)

I declare under penalty of perjury that the foregoing is true and correct.

_(signature)_

(Signature of Person Completing Service)