1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11 | DAVID ARKEEN EVANS,

Case No.  1:22-cv-00291-ADA-BAM (PC)

12 |                 Plaintiff,

**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS**

13 |      v.

14 | DIAZ, *et al.*,

(ECF No. 11)

15 |                 Defendants.

**FOURTEEN (14) DAY DEADLINE**

16

17 Plaintiff David Arkeen Evans ("Plaintiff") is a state prisoner proceeding *pro se* in this

18 civil rights action under 42 U.S.C. § 1983.  Plaintiff's first amended complaint is currently before

19 the Court for screening.  (ECF No. 11.)

20 **I.      Screening Requirement and Standard**

21 The Court is required to screen complaints brought by prisoners seeking relief against a

22 governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

23 § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

24 or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

25 relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

26 A complaint must contain "a short and plain statement of the claim showing that the

27 pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

28 required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

1    conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

2    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

3    true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,

4    572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

5          To survive screening, Plaintiff's claims must be facially plausible, which requires

6    sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

7    for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

8    *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

9    is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

10   standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

11   **II.      Plaintiff's Allegations**

12         Plaintiff is currently housed at California State Prison, Sacramento in Sacramento,

13   California.  The events in the complaint are alleged to have occurred while Plaintiff was housed at

14   Kern Valley State Prison ("KVSP") in Delano, California.  Plaintiff names the following

15   defendants: (1) Christian Pfeiffer, Warden; (2) John Martin, Correctional Sergeant; (3) Heather

16   Diaz, Clinical Psychologist; (4) John Bradford, Psychologist; (5) Stanley, Correctional Sergeant;

17   (6) Ernesto Diaz, Correctional Officer; (7) Anthony Reed,[1] Correctional Officer; (8) Cristian

18   Ramirez, Correctional Officer; (9) A. Aguilar, Correctional Officer; (10) E. Figueroa,

19   Correctional Officer; (11) Marin, Correctional Officer; (12) W. Mathews, Lieutenant; and

20   (13) Arrozola, Correctional Officer.[2]  All defendants are employees of KVSP and are sued in

21   their individual capacities, with the exception of Defendant Pfeiffer, who is also sued in his

22   official capacity.

23   ///

24   ///

---

25   [1] Although the first amended complaint lists this Defendant as "Anthony Correctional Officer," (ECF No. 11, p. 7), it
26   is clear from the original complaint and the allegations in the first amended complaint that Plaintiff intended to list
     Correctional Officer Anthony Reed as a defendant in this action.

27   [2] Plaintiff did not list Defendant Arrozola as a party to this action, in either the first amended complaint or the
     original complaint.  Nevertheless, it is clear from Plaintiff's allegations that he intended to include Correctional
28   Officer Arrozola as a defendant in this action.

Plaintiff alleges as follows:

On January 19, 2019, Plaintiff was placed in administrative segregation ("Ad-Seg") at approximately 1520 hours and placed in a Mental Health Treatment Room holding cage.  The unit supervisor, Defendant Sgt. Martin came into the Treatment Room and asked Plaintiff about the events that brought him to Ad-Seg.  Plaintiff explained his suicidal ideations and safety concerns regarding his sexual orientation/identity and incriminating photos being leaked on social media.  Defendant Sgt. Martin shook his head and laughed and called Plaintiff a "faggot" before leaving the room.

Plaintiff was taken by Defendant C/O Ernesto Diaz to be screened by medical staff outside the Treatment Room.  Plaintiff informed Defendant Psych. Tech. Mathews he was feeling suicidal.  Plaintiff was placed back in the Mental Health Treatment Room holding cage and left handcuffed, as is proper protocol when an inmate is suicidal.  Plaintiff began banging his head on the holding cage door several times.

Without warning, asking, or ordering Plaintiff to stop, Defendant C/O E. Diaz sprayed Plaintiff with his MK-9-OC spray.  Defendant E. Diaz left Plaintiff alone with the door closed to the Treatment Room, trapping Plaintiff inside with the fumes of the MK-9-OC pepper spray with no ventilation.  MK-9-OC pepper spray has several effects: swelling of mucous membranes, eyes, nose and throat, nasal, and sinus discharge, coughing, shortness (difficulty) of breathing, involuntary eye closure/complete blindness, painful burning of the skin, hyperventilation, and psychological effects (fear, anxiety, and panic).[3]

Plaintiff started choking and yelling, "I can't breathe! Help!"  Being handcuffed, Plaintiff turned to face the back of the cage and started mule kicking the cage door while continuing to yell for help.

Plaintiff could hear the Treatment Room door opened, and upon information and belief, Plaintiff was sprayed with two more cans of MK-9-OC pepper spray by both Defendants C/O E. Diaz and C. Ramirez in order to subject and prolong the infliction of pain and suffering.

[3] Plaintiff references exhibits throughout the first amended complaint.  Plaintiff is informed that although no exhibits were attached to the first amended complaint filed with the Court, exhibits are also not necessary at the pleading stage. Fed. R. Civ. P. 8(a).

Falsely, Defendants alleged in their incident report that Plaintiff was continuing to bang his head and refusing orders to stop, so they sprayed him in the "facial area," both with only a 3-second burst of MK-9-OC pepper spray.  Plaintiff's CDCR 7219 shows he was actually sprayed to the back of his body and was saturated (drenched) with OC-spray.

Again the Treatment Room door was closed by defendants.  Plaintiff could hear someone in the adjacent hallway giving orders, "Let's do this the right way, go grab your helmet, face, and riot shield."  Upon information and belief, Plaintiff has ascertained that the person giving orders to Defendant(s) to perform an illegal cell extraction was the unit supervisor, Defendant Sgt. Martin.

Fearing he was about to be cell extracted, Plaintiff repositioned his handcuffs from behind his back to the front of his body, sat down on the stool, faced the rear of the cage, and braced himself for the attack he felt coming.

Although Plaintiff's behavior did not warrant it, Defendants initiated a brutal cell extraction.  The holding cage door was opened, and upon information and belief, Defendant C/O Reed rammed Plaintiff with his riot shield, utilizing his body weight to pin Plaintiff to the desk, rendering Plaintiff incapable of physical movement.  (Defendant Reed is approx. 400 lbs.)

Plaintiff could hear a variety of voices giving him orders to give them his ankles to be shackled in leg restraints, however, Plaintiff was physically unable to comply with these orders because Defendant C/O Reed had him pinned down.  Plaintiff yelled as loud as he could repeatedly, "I can't move my legs."  Defendants responded with multiple batons and beat Plaintiff's body.

Defendants knew Plaintiff was unable to move, due to being pinned with the riot shield, yet intentionally and purposely gave Plaintiff orders to extend his legs backward to be shackled, just to beat him for not being physically able to comply.

Defendants ordered Plaintiff again to give them his legs, but Plaintiff could not physically comply and said so yelling, "I can't! The weight has my legs pinned under the desk unable to move."  Defendants continued to beat Plaintiff with their batons.

///

4

1   In Defendant C/O Aguilar's report, he reported seeing Defendant C/O Ramirez with his
2   baton in his hand as he approached the Treatment Room.

3   Finally Defendant C/O Reed moved the shield enough for Plaintiff to get on his knees
4   from the sitting position and extend his legs backward to be placed in leg restraints.

5   Upon information and belief, Defendant C/O E. Diaz applied the leg restraints excessively
6   tight around Plaintiff's ankles, then Defendants C/O Diaz and C/O Ramirez grabbed Plaintiff by
7   the chain of the shackles and violently snatched Plaintiff, dragging him out of the Treatment
8   Room into the hallway, causing excruciating pain to Plaintiff's ankles as the shackles cut into the
9   flesh of Plaintiff's skin.

10   In Defendants' report they falsely report that when they allegedly let Plaintiff out of the
11   cage for decontamination, Plaintiff rushed the riot shield.  However, Plaintiff could not see from
12   being pepper sprayed and could hardly breathe.  Defendant C/O E. Diaz reported that he informed
13   the other defendants that he witnessed Plaintiff slip his cuffs to the front of his body, meaning
14   they would never have opened the holding cage door to escort Plaintiff in Ad-Seg without first
15   recuffing Plaintiff.

16   In the hallway, while Plaintiff was in both hand and leg restraints and blind from pepper
17   spray, he laid there without provocation.  He was brutally beaten by multiple officers, Defendants
18   Martin, E. Diaz, A. Reed, C. Ramirez, and Marin, while Defendants C/O Aguilar and Figueroa
19   failed to intervene.  Despite Plaintiff's pleas and cries for them to stop, and there being no
20   legitimate penological need or provocation, Defendants continued to beat Plaintiff.

21   Plaintiff tried desperately to block the blows of blunt force delivered viciously to the face
22   and the back of his head, but was held down as Defendants repeatedly punched him in both eyes,
23   back of head, and entire body, kicking and stepping on him with their boots and hitting him with
24   their batons.  The brutality was relentless and lasted until Plaintiff was eventually rendered
25   unconscious, bloody, with lacerations, contusions, and bruises all over.

26   Upon information and belief, Defendants Ad-Seg unit supervisor Sgt. Martin, C/Os E.
27   Diaz, C. Ramirez, A. Reed, and Marin, were personally involved in the unwarranted, unlawful,
28   unconstitutional, unnecessary and excessive use of force.

Upon information and belief, Defendants C/Os Aguilar and E. Figueroa failed to protect Plaintiff by failing to intervene as they both were personally in the area (self admission per incident report) and had a reasonable opportunity and duty to do so.

Plaintiff regained consciousness as he was being re-cuffed behind his back with Defendant Reed on his back using his forearms and strength across Plaintiff's shoulder blades to keep Plaintiff pinned.  Plaintiff was lifted to his feet, but couldn't walk because the shackles were excessively tight and cutting into Plaintiff's skin.  The shackles had to be readjusted.

Plaintiff was escorted to the A-Pod shower for decontamination for the pepper spray. While inside the shower, Plaintiff heard defendants talking about the boot prints visible on Plaintiff's t-shirt and boxers (both white in original color), and heard Defendant Martin order they be cut off.

Plaintiff complained the water temperature was too hot to decontaminate, so Defendant Martin suggested the janitor's closet for cool running water.  Before leaving the shower, Plaintiff requested that he be allowed to cover up because of being completely nude, however, was denied.

Plaintiff heard Defendants state, "You're a fag anyway, you should like this."  Plaintiff was escorted nude from A-Pod shower to the janitor's closet in front of inmates and both male and female CDCR staff.

Plaintiff asked on a Form 22 why he wasn't allowed to cover up although he asked and stated he was uncomfortable, however, Defendants refused to reply.

This traumatized Plaintiff with immeasurable embarrassment, shame, humiliation, and degradation because of his feelings and insecurities about his penis and hearing people laugh and make comments made it worse.  Plaintiff has been diagnosed with Gender Dysphoria: Distress caused by conflict between a person's gender identity and the sex the person had and/or identified as having at the time of birth.  This only gave Plaintiff more reason for wanting to die.

After being decontaminated, Plaintiff was taken to the Correctional Treatment Center ("CTC") and then sent to the outside hospital for further examination.  At the outside hospital, Plaintiff received a CT scan (concussion protocol), x-rays for possible fractured ribs, stitches to close a wound over his right eye, and was treated for multiple contusions to the face, scalp, facial

1    abrasions, and extremities.

2         Upon re-entry back into KVSP, Plaintiff informed staff that he was still having suicidal

3    ideations and was sent back to Ad-Seg but placed on suicide watch.  Suicide watch is when a

4    Psych Tech sits and watches a patient's cell front until he/she can be evaluated by a Psychologist

5    and screened for a crisis bed.

6         On January 20, 2019, Defendant Psychologist Heather Diaz came to screen Plaintiff for

7    suicide risk assessment.  Plaintiff had first spoken with Defendant Heather Diaz the morning of

8    January 19, 2019, when he first reported suicidal ideations, however, she informed Plaintiff that

9    the crisis bed couldn't help him and denied Plaintiff intervention.

10        Defendant Heather Diaz asked Plaintiff, "what seems to be the problem?"  Plaintiff

11   responded, "I tried to kill myself and I wanna die, I don't wanna feel this pain anymore!"

12   Defendant Heather Diaz smirked and sarcastically asked, "And how did that work out for you

13   yesterday?"  Defendant Heather Diaz could visibly see that Plaintiff had been beaten.  Plaintiff

14   said, "I was beaten."  Defendant Heather Diaz denied/refused to treat Plaintiff's serious medical

15   need of suicide prevention and told Plaintiff, "As I told you yesterday, crisis bed can't help you."

16        Feeling helpless and hopeless and not only having been denied crisis bed for attempting

17   but encouraged by Defendant Heather Diaz, Plaintiff swallowed two (2) razor blades with the

18   intent of killing himself and was observed by the Psych. Tech. assigned to observe him on suicide

19   watch.  Plaintiff was then sent back to the outside hospital.

20        Defendant Heather Diaz came back to see Plaintiff and informed him that swallowing

21   razors won't do it, Plaintiff had to do something better.

22        Before leaving KVSP within CTC, Plaintiff was seen by another Psychologist, Defendant

23   John Bradford for another suicidal assessment.  Defendant Bradford informed Plaintiff that he

24   was told by Defendant Heather Diaz that Plaintiff was not suicidal, Plaintiff was just trying to get

25   back closer to his family and transferred to CSP-SAC.  Plaintiff believes Defendants Heather

26   Diaz and J. Bradford think Plaintiff was trying to become EOP to be transferred, however, KVSP

27   has an EOP program.  Defendant Bradford refused to admit Plaintiff to the crisis bed for suicide

28   prevention, because Defendant Heather Diaz lied and informed him Plaintiff was disrespectful to

7

1   her even with (2) razors in his stomach.

2       Plaintiff was taken to the outside hospital, where he signed a waiver releasing the hospital

3   doctor of liability, because Plaintiff refused to be treated.  Plaintiff was hoping that the two (2)

4   razors he ingested would kill him to end the physical and emotional pain.

5       When Plaintiff returned from the hospital and left CTC talking with the on-call

6   psychologist, he was again assigned to Ad-Seg.

7       On January 21, 2019, at approximately 0100 hours, Plaintiff was awakened by Sgt. John

8   Doe stating, "Your going to crisis bed."  Upon information and belief, Plaintiff was admitted to

9   the crisis bed by the on call psychologist Dr. John Doe.

10       On January 22, 2019, Plaintiff requested and participated in an excessive use of force

11   interview, however, Plaintiff could only reenact the incident without identifying those involved

12   by name, because he was blinded from the MK-9-OC pepper spray.

13       On January 23, 2019, while still on crisis bed, Plaintiff was issued a District Attorney

14   referral and new lock up order (114d) for serious bodily injury on a Peace Officer.  Plaintiff was

15   completely unaware that a Peace Officer broke his hand in the January 19, 2019 incident,

16   however, Plaintiff finally had a name of a defendant.

17       Upon information and belief, the ASU supervisor, Defendant Sgt. Martin, fractured his

18   hand while battering Plaintiff, then falsified reports (state documents) framing Plaintiff.  When

19   Plaintiff received the incident reports, he finally had all the names of the defendants involved in

20   their own partial admissions.  Defendants all either had hand or arm injuries and OC-spray on

21   them on their CDCR 7219 (indicative of offensive injuries).

22       While on crisis bed, Plaintiff again spoke with Defendant Heather Diaz and she said, "I

23   see you finally made it back here" as if admission to crisis bed was some sort of game and that

24   Plaintiff's suicidal ideations and attempted suicide were a joke to her.

25       On January 28, 2019, Plaintiff was discharged from the crisis bed and rehoused back in

26   Ad-Seg, where he had been beaten and framed, causing severe anxiety and fear.  Plaintiff was

27   purposely placed in cell #123, where the plumbing didn't work.  Specifically, the sink didn't

28   drain and feces would rise in Plaintiff's sink when the adjacent cell would run his water.

1   Plaintiff's cell smelled like sewage.  Plaintiff had to use his only drinking cup to scoop the

2   sewage water out of his sink and pour it into the toilet to prevent the water from overflowing onto

3   his cell floor.

4          Plaintiff asked Defendant Sgt. Stanley to move cells, however Plaintiff was informed that

5   Plaintiff was placed in this cell on purpose for breaking Defendant Martin's hand, "Your on the

6   shit list."  Plaintiff made several requests for another cup but was denied.

7          Plaintiff's clinician, Psychologist Leathers, noticed Plaintiff's inhumane living conditions

8   and spoke with custody and tried to get Plaintiff another cup.  Custody informed Dr. Leathers

9   Plaintiff would get a cup, but didn't give him one.  When Plaintiff washed his face and brushed

10  his teeth, the backsplash exposed Plaintiff physically to sewage.

11         Plaintiff made several requests to Defendants C/O Arrozola (who worked his section 2nd

12  watch) and C/O Aguilar (who worked his section 3rd watch), both verbally and in writing to

13  submit work orders with plant operations to fix the plumbing or move Plaintiff from cell #123.

14  Both Defendants Aguilar and Arrozola informed Plaintiff there were no cells available and that

15  they had submitted work orders to fix the plumbing, however, upon information and belief, they

16  both lied.

17         Plaintiff submitted a request to Defendant Sgt. Stanley requesting that the plumbing be

18  fixed, even though Sgt. Stanley had previously informed Plaintiff he was on the shit list.

19  Defendant Sgt. Stanley told Plaintiff that he submitted a work order, however, upon information

20  and belief, Defendant Sgt. Stanley lied.

21         Defendants Sgt. Stanley, C/O Arrozola, and Aguilar told Plaintiff that he was getting "The

22  Treatment" because Plaintiff was on "The Shit List" for filing an excessive force complaint about

23  the January 19, 2019 incident and that Plaintiff had nothing coming so stop asking.

24         Plaintiff attempted to submit a CDCR Form 22 explaining the inhumane conditions he

25  was being subjected to in retaliation, but Defendant C/O Aguilar refused to sign it unless Plaintiff

26  retracted the word "retaliation" for excessive force complaint.

27         Plaintiff wrote and sent a letter to Defendant Pfeiffer, Warden of KVSP, explaining the

28  inhumane conditions, then followed-up with a CDCR Form 22.  Plaintiff received no response.

1  Plaintiff on one occasion forgot to wash out the cup he used to scoop feces out of his sink,

2  and used the contaminated cup to take medication at pill call and became sick.

3  Plaintiff filed and submitted an Excessive Force Appeal Complaint on January 22, 2019;

4  Appeal Log # KVSP-0-19-00289; First Level Review ("FLR") was bypassed, Second Level

5  Review ("SLR") was granted in part on 3/8/2019; Third Level Review ("TLR") was denied on

6  10/15/2019.

7  On February 19, 2019, Plaintiff filed an Emergency 602 PREA Log # KVSP-0-19-00664,

8  FLR was bypassed; SLR was granted in part on June 6, 2019, TLR was denied on 10/2/2019.

9  On February 21, 2019, Plaintiff filed an appeal concerning the inhumane living conditions

10  of his confinement: FLR was denied on March 16, 2019, SLR was also denied on 6/7/2019; TLR

11  was denied on October 11, 2019.  Log # KVSP-0-19-00729.

12  On February 27, 2019, KVSP Plant Operation came and finally fixed Plaintiff's plumbing

13  and Plaintiff asked, "why did it take so long?"  The Plant Operations worker John Doe informed

14  Plaintiff there was never a work order submitted.  Upon information and belief, Plaintiff was

15  purposely subjected to these inhumane living conditions for approximately 31 days.

16  In April 2019, Plaintiff requested an Olsen Review, whereupon Plaintiff discovered that,

17  Defendant Heather Diaz had documented her reasoning for denying Plaintiff suicide intervention.

18  Defendant Heather Diaz fabricated by attributing a statement allegedly made by Plaintiff, "I want

19  to go to crisis bed to use the phone, there's better food, and it's more light."  Plaintiff never said

20  this.

21  Defendant Heather Diaz also lied, stating that Plaintiff told her, "Your the reason I beat up

22  the police."  Again, Plaintiff never said this.  Plaintiff's CDCR 7219 shows he was the one that

23  was beat.

24  Plaintiff filed a complaint against Defendant Heather Daiz, Log # KVSP-SC-19000017,

25  Institutional Level Response, Denied on 6/25/2019, Head Quarter Level Response "No

26  Intervention" on 7/24/2019.

27  Plaintiff suffered and complained of blurry vision and was sent to the eye doctor.  As a

28  result of the blunt blows to the face, Plaintiff now has Traumatic Glaucoma.  Plaintiff has to take

eye drops and his vision can worsen.  Plaintiff already received headaches from time to time,
however, since the January 19, 2019 beating has suffered headaches more, lasting throughout the
day.  The pain becomes so unbearable that Plaintiff usually cannot stand and he loses vision.
Plaintiff suffers from PTSD caused and diagnosed from the January 19, 2019 incident and has
severe panic attacks, Plaintiff also has nightmares from the January 19th incident, requiring
medication to help him sleep.  Plaintiff's left shoulder joint has been in pain since the defendants
stepped on it while he was on the ground.  Plaintiff has undergone several sessions of physical
therapy, however, it has not worked.  Plaintiff has and still suffers emotional injuries for the
anguish and psychological torture he endured in the events stated in this claim.

Plaintiff requests the following relief: (1) a declaratory judgment; (2) an injunction
ordering Defendant Christian Pfeiffer to retrain defendants on how to handle inmates dealing with
mental health crises and fire Defendants John Martin, Anthony Reed, Cristian Ramirez, Ernesto
Diaz, Marin, Heather Diaz, and John Bradford; (3) compensatory damages; (4) punitive damages;
and (5) costs and attorneys fees.

## III.    Discussion

The Court notes that the first amended complaint is nearly identical to the original
complaint, with the exception of additional clarifying details and the omission of any discussion
of Plaintiff's Rules Violation Report and disciplinary proceedings relating to this incident, which
are discussed below.

### A.    Linkage

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be
> subjected, any citizen of the United States . . . to the deprivation of any rights,
> privileges, or immunities secured by the Constitution . . . shall be liable to the
> party injured in an action at law, suit in equity, or other proper proceeding for
> redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between
the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See*
*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The
Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional

right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

To the extent Plaintiff attempts to bring claims against Defendant Pfeiffer, Plaintiff has failed to link Defendant Pfeiffer to any of his claims. Plaintiff alleges only that he wrote and sent a letter to Defendant Pfeiffer explaining the inhumane conditions of his cell with respect to the plumbing issue, and that he received no response and the problem was not corrected. There is no indication that Defendant Pfeiffer received Plaintiff's letter or was otherwise aware of the issue, and that he then failed to respond. Plaintiff has failed to link Defendant Pfeiffer to a specific act or omission that violated Plaintiff's rights.

### B. Official Capacity

Plaintiff is attempting to sue Defendant Pfeiffer in his official and individual capacity. Plaintiff may not pursue his claims for monetary damages against Defendant Pfeiffer in his official capacity. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dep't. of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their official capacities, *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991). Thus, Plaintiff may only proceed in this action for monetary damages against Defendant Pfeiffer in his individual capacity.

### C. Supervisory Liability

To the extent Plaintiff seeks to hold any Defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the

1   constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's

2   wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th

3   Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. &*

4   *Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16

5   (9th Cir. 2012) (en banc).  "Under the latter theory, supervisory liability exists even without overt

6   personal participation in the offensive act if supervisory officials implement a policy so deficient

7   that the policy itself is a repudiation of constitutional rights and is the moving force of a

8   constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646

9   (9th Cir. 1989)) (internal quotation marks omitted).

10         **D.**      **Application of *Heck v. Humphrey***

11         In the original complaint, Plaintiff stated that after the January 19, 2019 incident, he was

12   found guilty of a Rules Violation Report ("RVR") for battery on an officer, resulting in a 39-

13   month Security Housing Unit ("SHU") term.  Plaintiff also alleged that he was found guilty by

14   the hearing officer despite a lack of factual evidence.  (ECF No. 1, p. 20.)  As relief, Plaintiff

15   requested that the disciplinary finding be expunged and his forfeited good time credits be

16   restored.  (*Id.* at 28.)

17         Plaintiff has omitted any discussion of the RVR guilty finding, SHU term, or loss of good

18   time credits from his first amended complaint.  (*See* ECF No. 11.)  While it is true that an

19   amended complaint supersedes the original complaint, *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927

20   (9th Cir. 2012), Plaintiff also may not omit relevant facts in an attempt to state a cognizable

21   claim.  *See Azadpour v. Sun Microsys., Inc.*, No. 06–3272, 2007 WL 2141079, at *2 n. 2 (N.D.

22   Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior

23   complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike

24   the changed allegations as 'false and sham.'") (citations omitted).  The Court therefore takes

25   judicial notice of the guilty RVR finding, SHU term, and loss of good time credits as alleged in

26   the original complaint.  (ECF No. 1, pp. 20, 28.)

27         Thus, based on the allegations in the original complaint, Plaintiff's claims arising out of

28   the January 19, 2019 incident may be barred by *Heck v. Humprey*, 512 U.S. 477 (1994).

*Compare Edwards v. Balisok*, 520 U.S. 641, 646 (1987) (holding that § 1983 claim is not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction of loss of good-time credits) with *Ramirez v. Galaza*, 334 F.3d 850, 858 (9th. Cir. 2003) (holding that the favorable termination rule of *Heck* and *Edwards* does not apply to challenges to prison disciplinary hearings where the administrative sanction imposed does not affect the overall length of confinement and, thus, does not go to the heart of habeas).

A judgment in favor of Plaintiff on his claim, and restoration of any lost good time credits, will necessarily imply the invalidity of the disciplinary action, and Plaintiff has not demonstrated that the disciplinary action has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *See e.g.*, *Cox v. Clark*, 321 Fed. Appx. 673, 676 (9th Cir. 2009) (affirming dismissal of due process claim pursuant to *Balisok* to the extent that plaintiff sought restoration of good-time credits and the reversal of a disciplinary decision); *McCoy v. Spidle*, 2009 WL 1287872, *7–*8 (E.D. Cal. May 6, 2009) ("A challenge under section 1983, seeking only damages and declaratory relief for procedural due process violations is also barred if the nature of the challenge would necessarily imply the invalidity of the deprivation of good-time credits.").

Nevertheless, at the pleading stage, it is not clear which, if any, of Plaintiff's claims arising out of the January 19, 2019 incident may be barred by *Heck*. In an abundance of caution, and in light of the lack of clarity surrounding the circumstances of the RVR guilty finding, the Court will permit the claims that appear to be cognizable to proceed. However, the Court notes that it has not decided the *Heck* issue, and Defendants are not precluded from raising it in a motion to dismiss.

### E.    Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual

Punishments Clause of the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citations omitted).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

### 1.    Excessive Use of Force

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.  Relevant factors for this consideration include "the extent of injury . . . [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986)). Although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment, regardless of whether or not significant injury is evident.  *Hudson*, 503 U.S. at 9–10; *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002).

Plaintiff alleges that on January 19, 2019, Defendants Ernesto Diaz and Cristian Ramirez sprayed him with OC spray, Defendant Anthony Reed rammed Plaintiff with his riot shield and pinned Plaintiff to a desk, Defendants E. Diaz and Ramirez applied excessively tight ankle restraints and dragged Plaintiff by the chain of the shackles into the hallway, where Defendants Martin, E. Diaz, Reed, Ramirez, and Marin beat Plaintiff with batons again, all without provocation.  At the pleading stage, Plaintiff states cognizable excessive force claims against these Defendants related to the events of January 19, 2019.

However, Plaintiff failed to specify which defendants were involved in the use of batons to beat Plaintiff while he was inside the Treatment Room, and therefore these allegations fail to state a claim.

### 2.    Failure to Intervene

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  *Farmer*, 511 U.S. at 832–33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

1    "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene."

2    *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).

3           Plaintiff alleges that Defendants Aguilar and Figueroa failed to protect Plaintiff by failing

4    to intervene in the use of excessive force described above, although they were personally in the

5    area and had a reasonable opportunity to do so.  At the pleading stage, Plaintiff states cognizable

6    claims for failure to intervene against Defendants Aguilar and Figueroa.

7                              **3.      Sexual Harassment**

8           Plaintiff alleges that he was forced to walk, completely nude, from A-Pod shower to the

9    janitor's closet in front of inmates and both male and female CDCR staff.  The Court construes

10   this as a sexual harassment claim under the Eighth Amendment.  *See Austin v. Terhune*, 367 F.3d

11   1167, 1172 (9th Cir. 2004) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)).

12   Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow

13   inmates or prison guards, *see Schwenk*, 204 F.3d at 1197, the Eighth Amendment's protections do

14   not extend to all forms of sexual harassment.  Allegations of sexual harassment that do not

15   involve touching have routinely been found "not sufficiently serious" to sustain an Eighth

16   Amendment claim.  *Austin*, 367 F.3d at 1172 (upholding dismissal of claim premised on

17   allegations that correctional officer unzipped his pants and exposed his penis to an inmate from

18   inside control booth); *accord Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997) ("[t]o hold

19   that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment

20   would trivialize the objective component of the Eighth Amendment test and render it absurd.").

21   Plaintiff therefore fails to state a claim for sexual harassment under the Eighth Amendment.

22                              **4.      Medical Care**

23          A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in

24   violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate

25   indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)

26   (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate

27   indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure

28   to treat a prisoner's condition could result in further significant injury or the 'unnecessary and

1   wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately

2   indifferent." *Jett*, 439 F.3d at 1096.

3        A defendant does not act in a deliberately indifferent manner unless the defendant "knows

4   of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825,

5   837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609

6   F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is

7   shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible

8   medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this

9   standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have

10   been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,'

11   'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter*

12   *Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross

13   negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood*

14   *v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

15        Further, a "difference of opinion between a physician and the prisoner—or between

16   medical professionals—concerning what medical care is appropriate does not amount to

17   deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v.*

18   *Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*,

19   744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir.

20   2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must

21   show that the course of treatment the doctors chose was medically unacceptable under the

22   circumstances and that the defendants chose this course in conscious disregard of an excessive

23   risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation

24   marks omitted).

25        At the pleading stage, the Court finds that Plaintiff states a cognizable claim for deliberate

26   indifference to serious medical needs against Defendant John Bradford when he refused to admit

27   Plaintiff to a suicide crisis bed after Plaintiff swallowed two razor blades with the intent of killing

28   himself. The Court further finds that this claim is properly joined to Plaintiff's excessive force

1   and conditions of confinement claims, as part of the same series of transactions.

2          However, Plaintiff fails to state a claim against Defendant Heather Diaz for refusing to

3   admit Plaintiff to a crisis bed on January 19 or January 20, 2019.  Plaintiff alleges only that on

4   January 19, 2019, he spoke with Defendant H. Diaz and reported suicidal ideations, but she

5   informed Plaintiff that crisis bed couldn't help him and denied Plaintiff intervention.  At most,

6   this demonstrates a difference of opinion between Defendant H. Diaz and Plaintiff regarding his

7   crisis bed placement.  Then on January 20, 2019, after Plaintiff was returned to KVSP from the

8   outside hospital, Defendant H. Diaz again informed Plaintiff that a crisis bed could not help him.

9   At that point, Plaintiff was apparently placed on suicide watch, where Plaintiff swallowed two

10  razor blades while being observed by the Psych. Tech. assigned to observe Plaintiff.[4]  Assuming

11  that Defendant H. Diaz authorized Plaintiff's placement on suicide watch, even after refusing to

12  place him in a crisis bed, this again demonstrates at most a difference of opinion between

13  Defendant H. Diaz and Plaintiff regarding his need for a crisis bed placement.

14              **5.       Conditions of Confinement**

15         The Eighth Amendment protects prisoners from inhumane methods of punishment and

16  from inhumane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v.*

17  *Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Thus, no matter where they are housed, prison

18  officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing,

19  sanitation, medical care, and personal safety.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.

20  2000) (quotation marks and citations omitted).  To establish a violation of the Eighth

21  Amendment, the prisoner must "show that the officials acted with deliberate indifference . . ."

22  *Labatad v. Corrs. Corp. of Amer.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cty. of*

23  *Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

24         The deliberate indifference standard involves both an objective and a subjective prong.

25  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  *Farmer*, 511

26  U.S. at 834.  Second, subjectively, the prison official must "know of and disregard an excessive

27  _____

    [4] Plaintiff has not identified the Psych. Tech. as a defendant in this action or provided any other identifying
28  information about this individual.  The Court therefore has not analyzed whether Plaintiff states a claim against the
    Psych. Tech.

1  risk to inmate health or safety." *Id.* at 837; *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1313 (9th

2  Cir. 1995).

3        Objectively, extreme deprivations are required to make out a conditions-of-confinement

4  claim and only those deprivations denying the minimal civilized measure of life's necessities are

5  sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*,

6  503 U.S. 1, 9 (1992). Although the Constitution "'does not mandate comfortable prisons,'"

7  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "inmates are entitled to reasonably adequate

8  sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time,"

9  *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

10        "'The occasional presence of a rodent is insufficient to establish the objective component

11  of an Eighth Amendment claim, which requires that a deprivation be sufficiently serious.'"

12  *Jackson v. Walker*, 2009 WL 1743639 at *8 (E.D. Cal. 2009) (quoting *Tucker v. Rose*, 955 F.

13  Supp. 810, 816 (N.D. Ohio 1997). However, a "lack of sanitation that is severe or prolonged can

14  constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cty.*

15  *of Kern*, 45 F.3d 1310, 1314 (9th Cir.), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir.

16  1995). *See also Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (finding no qualified immunity to

17  officers who housed inmate "in cells teeming with human waste" for six days).

18        Plaintiff alleges that he was housed for approximately 31 days in a cell where the sink did

19  not drain and feces would rise in Plaintiff's sink when the adjacent cell would run his water, and

20  Plaintiff had to use his only drinking cup to scoop the sewage water out of his sink and pour it

21  into the toilet to prevent the water from overflowing onto his cell floor. Plaintiff asked

22  Defendants Stanley, Arrozola, and Aguilar verbally and in writing to move cells or to submit

23  work orders with plant operations to fix the plumbing and was informed that no cells were

24  available and that they had submitted work orders to fix the plumbing. When a Plant Operations

25  worker came to fix Plaintiff's plumbing, he informed Plaintiff that a work order was never

26  submitted.

27        At the pleading stage, Plaintiff states a cognizable claim against Defendants Stanley,

28  Arrozola, and Aguilar related to his conditions of confinement. Further, in light of the allegation

1   that Plaintiff was placed in this cell because he was on "the shit list" and getting "the treatment"

2   for breaking Defendant Martin's hand, the Court finds that this claim is properly joined to

3   Plaintiff's claims of excessive force.

**F.    False Reports**

5          Plaintiff alleges that Defendant Martin falsified reports framing Plaintiff for fracturing

6   Defendant Martin's hand, and that Defendant H. Diaz fabricated her reasoning for denying

7   Plaintiff suicide intervention.

8          The creation of false evidence, standing alone, is not actionable under § 1983.  *See*

9   *Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison

10   record has not been recognized); *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013

11   WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right

12   to be free from false accusations of misconduct, so the mere falsification of a report does not give

13   rise to a claim under section 1983.") (citations omitted).  Moreover, "plaintiff cannot state a

14   cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false

15   rule violation against plaintiff."  *Jones v. Prater*, No. 2:10-cv-01381 JAM KJN P, 2012 WL

16   1979225, at *2 (E.D. Cal. Jun. 1, 2012); *see also Youngs v. Barretto*, No. 2:16-cv-0276 JAM AC

17   P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation

18   report does not rise to the level of cruel and unusual punishment) (citations omitted).

19          Accordingly, Plaintiff's complaint does not state a cognizable claim against Defendant

20   Martin or H. Diaz related to the creation of false reports or medical records.

**G.    Declaratory Relief**

22          To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary.  "A

23   declaratory judgment, like other forms of equitable relief, should be granted only as a matter of

24   judicial discretion, exercised in the public interest."  *Eccles v. Peoples Bank of Lakewood Village*,

25   333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful

26   purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and

27   afford relief from the uncertainty and controversy faced by the parties."  *United States v.*

28   *Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).  If this action reaches trial and the jury returns

a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated.  Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### H.    Injunctive Relief

Insofar as Plaintiff seeks injunctive relief against officials, any such request is now moot because Plaintiff is no longer housed at that facility.  *See Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

Further, requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).  Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff."  *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).  Plaintiff's request for retraining of Defendants on how to handle inmates dealing with mental health crises and to fire Defendants Martin, Reed, Ramirez, E. Diaz, Marin, H. Diaz, and Bradford are not narrowly drawn and are not the least intrusive means necessary to correct the harms alleged.

///

///

21

**IV.      Conclusion and Order**

Based on the foregoing, the Court finds that Plaintiff's first amended complaint states cognizable claims against: (1) Defendants Ernesto Diaz and Cristian Ramirez for excessive force in violation of the Eighth Amendment for spraying Plaintiff with OC spray; (2) Defendant Anthony Reed for excessive force in violation of the Eighth Amendment for ramming Plaintiff with his riot shield and pinning Plaintiff to a desk; (3) Defendants E. Diaz and Ramirez for excessive force in violation of the Eighth Amendment for applying excessively tight ankle restraints and dragging Plaintiff by the chain of the shackles into the hallway; (4) Defendants John Martin, E. Diaz, Reed, Ramirez, and Marin for excessive force in violation of the Eighth Amendment for beating Plaintiff with batons in the hallway; (5) Defendants A. Aguilar and E. Figueroa for failure to intervene in violation of the Eighth Amendment; (6) Defendant John Bradford for deliberate indifference to serious medical needs in violation of the Eighth Amendment for refusing to admit Plaintiff to a suicide crisis bed after Plaintiff swallowed two razor blades with the intent of killing himself; and (7) Defendants Stanley, Arrozola, and Aguilar for unconstitutional conditions of confinement in violation of the Eighth Amendment.

The Court further finds that Plaintiff's first amended complaint fails to state any other cognizable claims against any other defendants.

Accordingly, it is HEREBY ORDERED as follows:

1.  This action proceed on Plaintiff's first amended complaint, filed July 7, 2022, (ECF No. 11), against:

    a.  Defendants E. Diaz and Ramirez for excessive force in violation of the Eighth Amendment for spraying Plaintiff with OC spray;

    b.  Defendant Reed for excessive force in violation of the Eighth Amendment for ramming Plaintiff with his riot shield and pinning Plaintiff to a desk;

    c.  Defendants E. Diaz and Ramirez for excessive force in violation of the Eighth Amendment for applying excessively tight ankle restraints and dragging Plaintiff by the chain of the shackles into the hallway;

///

      d.   Defendants Martin, E. Diaz, Reed, Ramirez, and Marin for excessive force in violation of the Eighth Amendment for beating Plaintiff with batons in the hallway;

      e.   Defendants A. Aguilar and E. Figueroa for failure to intervene in violation of the Eighth Amendment;

      f.   Defendant Bradford for deliberate indifference to serious medical needs in violation of the Eighth Amendment for refusing to admit Plaintiff to a suicide crisis bed after Plaintiff swallowed two razor blades with the intent of killing himself; and

      g.   Defendants Stanley, Arrozola, and Aguilar for unconstitutional conditions of confinement in violation of the Eighth Amendment; and

2.  All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

\* \* \*

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 5, 2022**            /s/ *Barbara A. McAuliffe*

                                       UNITED STATES MAGISTRATE JUDGE