1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10

11 DAVID ARKEEM EVANS,

12             Plaintiff,

13     v.

14 DIAZ, *et al.*,

15             Defendants.

16

Case No.  1:22-cv-00291-KES-BAM (PC)

FINDINGS AND RECOMMENDATIONS GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(ECF No. 63)

**FOURTEEN (14) DAY DEADLINE**

## I.     Introduction

Plaintiff David Arkeem Evans ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's first amended complaint against: (1) Defendants E. Diaz and Ramirez for excessive force in violation of the Eighth Amendment for spraying Plaintiff with OC spray; (2) Defendants E. Diaz and Ramirez for excessive force in violation of the Eighth Amendment for applying excessively tight ankle restraints and dragging Plaintiff by the chain of the shackles into the hallway; (3) Defendants Martins, E. Diaz, Ramirez, and Marin for excessive force in violation of the Eighth Amendment for beating Plaintiff with batons in the hallway; (4) Defendants A. Aguilar and E. Figueroa for failure to intervene in violation of the Eighth Amendment; (5) Defendant Bradford for deliberate indifference to serious medical needs in violation of the Eighth Amendment for refusing to admit Plaintiff to a suicide crisis bed after Plaintiff swallowed two razor blades with the intent of killing

1

himself; and (6) Defendants Stanley, Arrozola, and Aguilar for unconstitutional conditions of confinement in violation of the Eighth Amendment.

Currently before the Court is a motion for summary judgment filed by all Defendants on the grounds that: (1) Plaintiff's Eighth Amendment claims of excessive force against Defendants Diaz, Ramirez, Martins, and Marin, and claim of failure to intervene against Defendants Aguilar and Figueroa, are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and (2) Plaintiff's claim of deliberate indifference to serious medical needs against Defendant Bradford and claim of unconstitutional conditions of confinement against Defendants Stanley, Arrozola, and Aguilar are not supported by the undisputed facts.  (ECF No. 63.)[1]  Following an extension of time, Plaintiff filed an opposition to the motion for summary judgment on October 4, 2024.  (ECF No. 80.) Defendants filed a reply on October 18, 2024.  (ECF No. 81.)  The motion for summary judgment is fully briefed.  Local Rule 230(l).  For the reasons set forth below, the Court recommends that Defendants' motion for summary judgment be granted in part and denied in part.

**II.    Legal Standard**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  (ECF No. 63-2); *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).

movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly

1  reviewed and considered the evidence it deemed admissible, material, and appropriate.

2  **III.     Discussion**

3      **A.     Parties' Requests for Judicial Notice**

4      Defendants request that the Court take judicial notice of records from the California

5  Department of Corrections and Rehabilitation ("CDCR") and the Kern County Superior Court

6  that arose from the alleged events at issue in this action.  (ECF No. 63-3, Exs. A–H.)  Plaintiff

7  filed his own request for judicial notice that includes many of the same documents in Defendants'

8  request, in addition to other records.  (ECF No. 80, pp. 9–12, 23–122.)  Neither party filed a

9  response to the opposing party's request for judicial notice.

10      Rule 201(b) of the Federal Rules of Evidence provides that a court may judicially notice a

11  fact that is not subject to reasonable dispute because it: (1) is generally known within the trial

12  court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

13  accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  The content of records and

14  reports of administrative bodies are proper subjects for judicial notice under Rule 201(b).

15  *Interstate Natural Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953).  A court may

16  also take judicial notice of the contents of public records, including state court records.  *Bias v.*

17  *Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688

18  (9th Cir. 2001).

19      The parties' requests for judicial notice are granted.  As requested, the Court takes judicial

20  notice of the existence and content, although not the truth of any matters asserted, of the included

21  records.  The requested records include state court records and administrative records from

22  CDCR that are appropriate for judicial notice.  (*See* ECF No. 63-3, Exs. A–G; ECF No. 80, pp.

23  23–75, 86–93, 98–101.)  Both parties also include excerpts of medical records and exhibits

24  previously attached to Plaintiff's complaint or Defendants' motion for summary judgment, which,

25  although they are not the types of documents generally necessary for the Court to judicially

26  notice, the Court accepts here at the request of both parties.  (*See* ECF No. 63-3, Exs. G–H; ECF

27  No. 80, pp. 76–85, 94–97, 102–122.)

28  ///

To the extent either party's request for judicial notice includes additional documents or pages not included by the other party's request, the Court finds that the documents nevertheless encompass the same types of records already found appropriate for judicial notice, and that the records are not subject to reasonable dispute in light of the lack of opposition from the opposing party.

**B.    Disputed Material Facts**

Although Plaintiff provided a Statement of Disputed Factual Issues, Plaintiff did not comply with the rules in preparing his opposition, including by failing to reproduce Defendants' Statement of Undisputed Facts and providing "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any disputed facts, or providing a statement of disputed facts.  Local Rule 260(b). Nevertheless, Defendants' Statement of Undisputed Facts may be brought into dispute by allegations set forth in Plaintiff's verified first amended complaint.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).

A comparison of the allegations contained in Plaintiff's verified first amended complaint with Defendants' Statement of Undisputed Facts reveals that the parties have set forth markedly different versions of the events at issue in this action, particularly with respect to Plaintiff's claims of excessive force and failure to intervene.  Accordingly, the Court finds it appropriate to set forth each party's position as to the excessive force and failure to intervene claims separately, rather than attempting to provide a list of undisputed facts.

Plaintiff's Claims of Excessive Force and Failure to Intervene

a.    *Defendants' Allegations*

Plaintiff was a state-prison inmate incarcerated at KVSP in 2019 at the time of the incidents alleged in his FAC.  (ECF No. 63-1 (Statement of Undisputed Facts in support of Defendants' Motion for Summary Judgment ("SUF") No. 1.))  CDCR released Plaintiff on parole in August 2023.  (SUF No. 2.)

///

5

On January 19, 2019, at 1520 hours, Plaintiff was placed into an Administrative Segregation Mental Health Treatment Room holding cell ("AdSeg").  (SUF No. 3.)  Staff escorted Plaintiff to the ASU medical clinic to obtain his vitals.  (SUF No. 4.)  There, Plaintiff informed staff he felt suicidal.  (*Id.*)  At 1533, Plaintiff returned to the AdSeg holding cell and began banging his head on the cell door.  (SUF No. 5.)

Officers ordered Plaintiff to stop and Plaintiff did not comply.  (SUF No. 6.)  Officers sprayed Plaintiff with pepper spray.  (SUF No. 7.)  While Plaintiff initially stopped banging his head on the cell door, he immediately began doing it again and officers again sprayed Plaintiff with pepper spray.  (*Id.*)  Defendant Martins initiated an emergency cell extraction to decontaminate Plaintiff from the pepper spray and provide medical attention for his self-inflicted head injury.  (SUF No. 8.)  Plaintiff violently resisted Defendants during the cell extraction.  (SUF No. 9.)  In doing so, Plaintiff injured multiple Defendants and fractured Defendant Martins' hand.  (*Id.*)  On January 23, 2019, Plaintiff was issued a District Attorney referral for serious bodily injury on a peace officer.  (SUF No. 10.)

On February 6, 2019, the Kern County District Attorney filed an Information charging Plaintiff with multiple counts of battery on a peace officer, including Count 4 alleging Plaintiff knowingly used force or violence to resist an officer in the performance of his lawful duties causing great bodily harm pursuant to Penal Code section 69.  (SUF No. 11.)  On September 26, 2023, Plaintiff pleaded *nolo contendere* ("no contest") to an amended Count 4 as a misdemeanor.  (SUF No. 12.)  The Court found Plaintiff guilty and sentenced him to 32 days in custody plus fines and fees of $70.  (SUF No. 13.)  Plaintiff's sentence was deemed served in full due to credits for time served and good and work time.  (SUF No. 14.)

b.    *Plaintiff's Allegations*[2]

On January 19, 2019, Plaintiff was placed in administrative segregation ("Ad-Seg") at approximately 1520 hours and placed in a Mental Health Treatment Room holding cage.

Plaintiff was taken by Defendant C/O Ernesto Diaz to be screened by medical staff outside the Treatment Room.  Plaintiff informed Psych. Tech. Mathews he was feeling suicidal.

---

[2] (FAC at 7:20–12:8; 13:27–14:9.)

6

1   Plaintiff was placed back in the Mental Health Treatment Room holding cage and left handcuffed,

2   as is proper protocol when an inmate is suicidal.  Plaintiff began banging his head on the holding

3   cage door several times.

4        Without warning, asking, or ordering Plaintiff to stop, Defendant C/O E. Diaz sprayed

5   Plaintiff with his MK-9-OC spray.  Defendant E. Diaz left Plaintiff alone with the door closed to

6   the Treatment Room, trapping Plaintiff inside with the fumes of the MK-9-OC pepper spray with

7   no ventilation.  MK-9-OC pepper spray has several effects: swelling of mucous membranes, eyes,

8   nose and throat, nasal, and sinus discharge, coughing, shortness (difficulty) of breathing,

9   involuntary eye closure/complete blindness, painful burning of the skin, hyperventilation, and

10  psychological effects (fear, anxiety, and panic).

11       Plaintiff started choking and yelling, "I can't breathe! Help!"  Being handcuffed, Plaintiff

12  turned to face the back of the cage and started mule kicking the cage door while continuing to yell

13  for help.

14       Plaintiff could hear the Treatment Room door opened, and upon information and belief,

15  Plaintiff was sprayed with two more cans of MK-9-OC pepper spray by both Defendants C/O E.

16  Diaz and C. Ramirez in order to subject and prolong the infliction of pain and suffering.

17       Falsely, Defendants alleged in their incident report that Plaintiff was continuing to bang

18  his head and refusing orders to stop, so they sprayed him in the "facial area," both with only a 3-

19  second burst of MK-9-OC pepper spray.  Plaintiff's CDCR 7219 shows he was actually sprayed

20  to the back of his body and was saturated (drenched) with OC-spray.

21       Again the Treatment Room door was closed by defendants.  Plaintiff could hear someone

22  in the adjacent hallway giving orders, "Let's do this the right way, go grab your helmet, face, and

23  riot shield."  Upon information and belief, Plaintiff has ascertained that the person giving orders

24  to Defendant(s) to perform an illegal cell extraction was the unit supervisor, Defendant Martins.

25       Fearing he was about to be cell extracted, Plaintiff repositioned his handcuffs from behind

26  his back to the front of his body, sat down on the stool, faced the rear of the cage, and braced

27  himself for the attack he felt coming.

28  ///

7

1    Although Plaintiff's behavior did not warrant it, Defendants initiated a brutal cell

2    extraction.  The holding cage door was opened, and upon information and belief, C/O Reed[3]

3    rammed Plaintiff with his riot shield, utilizing his body weight to pin Plaintiff to the desk,

4    rendering Plaintiff incapable of physical movement.  (Reed is approx. 400 lbs.)

5    Plaintiff could hear a variety of voices giving him orders to give them his ankles to be

6    shackled in leg restraints, however, Plaintiff was physically unable to comply with these orders

7    because C/O Reed had him pinned down.  Plaintiff yelled as loud as he could repeatedly, "I can't

8    move my legs."  Defendants responded with multiple batons and beat Plaintiff's body.

9    Defendants knew Plaintiff was unable to move, due to being pinned with the riot shield,

10    yet intentionally and purposely gave Plaintiff orders to extend his legs backward to be shackled,

11    just to beat him for not being physically able to comply.

12    Defendants ordered Plaintiff again to give them his legs, but Plaintiff could not physically

13    comply and said so yelling, "I can't! The weight has my legs pinned under the desk unable to

14    move."  Defendants continued to beat Plaintiff with their batons.

15    In Defendant C/O Aguilar's report, he reported seeing Defendant C/O Ramirez with his

16    baton in his hand as he approached the Treatment Room.

17    Finally C/O Reed moved the shield enough for Plaintiff to get on his knees from the

18    sitting position and extend his legs backward to be placed in leg restraints.

19    Upon information and belief, Defendant C/O E. Diaz applied the leg restraints excessively

20    tight around Plaintiff's ankles, then Defendants C/O Diaz and C/O Ramirez grabbed Plaintiff by

21    the chain of the shackles and violently snatched Plaintiff, dragging him out of the Treatment

22    Room into the hallway, causing excruciating pain to Plaintiff's ankles as the shackles cut into the

23    flesh of Plaintiff's skin.

24    In Defendants' report, they falsely report that when they allegedly let Plaintiff out of the

25    cage for decontamination, Plaintiff rushed the riot shield.  However, Plaintiff could not see from

26    being pepper sprayed and could hardly breathe.  Defendant C/O E. Diaz reported that he informed

27

28    [3] Former defendant Reed was dismissed from this action on August 26, 2024, for failure to substitute the proper party pursuant to Federal Rule of Civil Procedure 25.  (ECF Nos. 70, 76.)

1  the other defendants that he witnessed Plaintiff slip his cuffs to the front of his body, meaning

2  they would never have opened the holding cage door to escort Plaintiff in Ad-Seg without first re-

3  cuffing Plaintiff.

4          In the hallway, while Plaintiff was in both hand and leg restraints and blind from pepper

5  spray, he laid there without provocation.  He was brutally beaten by multiple officers, Defendants

6  Martins, E. Diaz, C. Ramirez, and Marin, and former defendant C/O Reed, while Defendants C/O

7  Aguilar and Figueroa failed to intervene.  Despite Plaintiff's pleas and cries for them to stop, and

8  there being no legitimate penological need or provocation, Defendants continued to beat Plaintiff.

9          Plaintiff tried desperately to block the blows of blunt force delivered viciously to the face

10  and the back of his head, but was held down as Defendants repeatedly punched him in both eyes,

11  back of head, and entire body, kicking and stepping on him with their boots and hitting him with

12  their batons.  The brutality was relentless and lasted until Plaintiff was eventually rendered

13  unconscious, bloody, with lacerations, contusions, and bruises all over.

14          Upon information and belief, Defendants Ad-Seg unit supervisor Martins, C/Os E. Diaz,

15  C. Ramirez, and Marin, and former defendant C/O Reed, were personally involved in the

16  unwarranted, unlawful, unconstitutional, unnecessary and excessive use of force.

17          Upon information and belief, Defendants C/Os Aguilar and E. Figueroa failed to protect

18  Plaintiff by failing to intervene as they both were personally in the area (self admission per

19  incident report) and had a reasonable opportunity and duty to do so.

20          Plaintiff regained consciousness as he was being re-cuffed behind his back with Reed on

21  his back using his forearms and strength across Plaintiff's shoulder blades to keep Plaintiff

22  pinned.  Plaintiff was lifted to his feet, but couldn't walk because the shackles were excessively

23  tight and cutting into Plaintiff's skin.  The shackles had to be readjusted.

24          Plaintiff was escorted to the A-Pod shower for decontamination for the pepper spray.

25  While inside the shower, Plaintiff heard defendants talking about the boot prints visible on

26  Plaintiff's t-shirt and boxers (both white in original color), and heard Defendant Martins order

27  they be cut off.

28  ///

9

Plaintiff complained the water temperature was too hot to decontaminate, so Defendant Martins suggested the janitor's closet for cool running water.  Before leaving the shower, Plaintiff requested that he be allowed to cover up because of being completely nude, however, was denied.

Plaintiff heard Defendants state, "You're a fag anyway, you should like this."  Plaintiff was escorted nude from A-Pod shower to the janitor's closet in front of inmates and both male and female CDCR staff.

Plaintiff asked on a Form 22 why he wasn't allowed to cover up although he asked and stated he was uncomfortable, however, Defendants refused to reply.

This traumatized Plaintiff with immeasurable embarrassment, shame, humiliation, and degradation because of his feelings and insecurities about his penis and hearing people laugh and make comments made it worse.  Plaintiff has been diagnosed with Gender Dysphoria: Distress caused by conflict between a person's gender identity and the sex the person had and/or identified as having at the time of birth.  This only gave Plaintiff more reason for wanting to die.

After being decontaminated, Plaintiff was taken to the Correctional Treatment Center ("CTC") and then sent to the outside hospital for further examination.  At the outside hospital, Plaintiff received a CT scan (concussion protocol), x-rays for possible fractured ribs, stitches to close a wound over his right eye, and was treated for multiple contusions to the face, scalp, facial abrasions, and extremities.

On January 23, 2019, while still on crisis bed, Plaintiff was issued a District Attorney referral and new lock up order (114d) for serious bodily injury on a Peace Officer.  Plaintiff was completely unaware that a Peace Officer broke his hand in the January 19, 2019 incident, however, Plaintiff finally had a name of a defendant.

Upon information and belief, the ASU supervisor, Defendant Sgt. Martins, fractured his hand while battering Plaintiff, then falsified reports (state documents) framing Plaintiff.  When Plaintiff received the incident reports, he finally had all the names of the defendants involved in their own partial admissions.  Defendants all either had hand or arm injuries and OC-spray on them on their CDCR 7219 (indicative of offensive injuries).

///

**C.   Undisputed Material Facts ("UMF")**[4]

Plaintiff's Claims of Deliberate Indifference to a Serious Medical Condition

1.   On January 20, 2019, Plaintiff alleged he was suicidal and wanted to be admitted to the Mental Health Crisis Bed ("MHCB").  (FAC at 12:26–13:2; ECF No. 63-5 ("Bradford Decl.") at 2.)

2.   Plaintiff swallowed two razor blades, which was witnessed and reported by the Psych Tech assigned to observe Plaintiff while he was on suicide watch.  (FAC at 12:26–13:2; Bradford Decl. at 2; Pl.'s Depo. at 22:4–19, 23:4–15; ECF No. 80, p. 110 ("Ex. N").)

3.   Another psychologist, Dr. H. Diaz, was in rotation to see the next patient, which would have been Plaintiff.  However, Dr. Diaz asked Defendant Bradford to see Plaintiff instead. (Bradford Decl., ¶ 3.)

4.   Defendant Bradford agreed to see Plaintiff and briefly spoke to him as he was being transferred to an outside hospital for X-rays per policy.  (*Id.* ¶ 4; FAC at 13:5–6.)

5.   Plaintiff refused treatment and X-rays at the outside hospital and was transferred back to the prison.  (Bradford Decl. ¶ 5; FAC at 13:14–17; Pl.'s Depo at 22:8–25.)

6.   Defendant Bradford spoke with Plaintiff when he returned from the outside hospital. (Bradford Decl. ¶ 6.)

7.   Defendant Bradford determined that Plaintiff had secondary motives for wanting to be transferred to the MHCB, and believed that it was so Plaintiff could visit Dr. Diaz, which he had tried to do on several other occasions in the past.  (*Id.*)

8.   Defendant Bradford observed no sign that Plaintiff had any razor blades in his possession or that he had ingested the razor blades.  (*Id.* ¶ 7.)

///

---

[4] *See* Defendants' Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment.  (ECF No. 63-1.)  As discussed above, Plaintiff did not comply with the rules in preparing his opposition, including by failing to reproduce Defendants' Statement of Undisputed Facts and providing "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any disputed facts, or providing a statement of disputed facts.  Local Rule 260(b).  As a result, Defendants' Statement of Undisputed Facts is accepted except where brought into dispute by Plaintiff's verified first amended complaint. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).  Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

11

9. After returning from the hospital, Plaintiff was returned to AdSeg for a few hours before being transferred to a MHCB after speaking to another doctor who was on call. (Pl.'s Depo. at 25:3–13; 28:12–29:3.)

10. Although Plaintiff was injured when the razors came out in a bowel movement, he did not receive medical treatment. Plaintiff flushed the razor blades. (Pl.'s Depo. at 30:9–13, 31:17–25, 32:5–9.)

Claims of Deliberate Indifference to Conditions of Confinement

11. On January 28, 2019, Plaintiff returned to AdSeg and was placed into Cell 123. (FAC at 14:14–16; RJN Ex. C.)

12. Plaintiff alleges the plumbing did not work in Cell 123. The sink did not drain and feces would back up into his sink whenever the adjacent cell would run its water. Plaintiff's cell smelled like sewage. (FAC at 14:16–18.)

13. Plaintiff alleges he made multiple requests to Defendants Arrozola and Aguilar, verbally and in writing, to move Plaintiff from Cell 123 or that plumbing work orders be submitted. Both Defendants Aguilar and Arrozola informed Plaintiff there were no cells available and that they had submitted work orders to fix the plumbing, but Plaintiff believes that they both lied. Plaintiff also submitted a request to Defendant Stanley requesting that the plumbing be fixed. Defendant Stanley told Plaintiff that he submitted a work order, but Plaintiff believes that Defendant Stanley lied. (*Id.* at 15:1–10.)

14. On February 12, 2019, Plaintiff submitted a CDCR 22 Inmate/Parolee Request for Interview, Item or Service ("Form 22") stating that a work order had been put in by Defendant Arrozola for Plaintiff's sink "like 2 weeks ago" and stating that his sink still would not drain, human waste was flowing up through the drain holes when Plaintiff's neighbor turned his water on and requesting that a plumber be sent. The Form 22 is signed as received by "Aguilar" on February 13, 2019, and indicates that the form was not forwarded to another staff. (ECF No. 80, p. 91 ("Ex. H").)

15. On February 21, 2019, Plaintiff submitted a Form 22 stating that he had been in Cell 123 since January 28, 2019, his sink would not drain, and had fecal matter floating out of the

drain.  Plaintiff further wrote that several work orders had been put in, but Aguilar said the plumber stated it was not an emergency.  Plaintiff stated that he wrote to the Warden but got no reply.  The Form 22 indicates that the 2nd Watch officer "Refused to Sign" and the form was forwarded to "2nd Watch Sergeant Stanley."  (*Id.* at 99 ("Ex. K").)

16. In Section B: Staff Response, Defendant Stanley responded to Plaintiff's request on February 21, 2019, stating: "Work order completed/re-submitted today.  Plant ops staff will be here as soon as available."  (*Id.*)

17. In Section C: Request for Supervisor Review, Plaintiff stated that Plant Ops staff had already told Defendant Aguilar that this condition was not an emergency.  (*Id.*)

18. KVSP had a history of multiple plumbing problems, including in ASU.  (ECF No. 63-7 ("Stanley Decl.") ¶ 2; ECF No. 63-9 ("Arrozola Decl.") ¶ 2; ECF No. 63-8 ("Aguilar Decl.") ¶ 2.)

19. The standard operating procedure in the ASU was to communicate a plumbing repair request to the Captain's secretary the same day as the plumbing issue was reported by an inmate.  (Stanley Decl. ¶ 3; Arrozola Decl. ¶ 3; Aguilar Decl. ¶ 3.)

20. The repair request could be communicated by a phone call to the Captain's secretary, or by placing a written request in the Captain's secretary's in-house mail box.  (Stanley Decl. ¶ 3; Arrozola Decl. ¶ 3; Aguilar Decl. ¶ 3.)

21. This is the procedure followed by Defendants Stanley, Arrozola, and Aguilar, and Defendant Stanley ensured everyone under his command followed this procedure. (Stanley Decl. ¶ 3; Arrozola Decl. ¶ 3; Aguilar Decl. ¶ 3.)

22. After receiving the repair request, the Captain's secretary would generate a Demand Maintenance Work Order Detail ("Work Order").  (Stanley Decl. ¶ 4; Arrozola Decl. ¶ 4; Aguilar Decl. ¶ 4.)

23. It was in the officers' best interest to get plumbing issues resolved as quickly as possible to avoid any discontent among the inmates and to minimize further administrative work. (Stanley Decl. ¶ 5; Arrozola Decl. ¶ 5; Aguilar Decl. ¶ 5.)

///

13

24. If an open cell was available, the inmate with the plumbing problem would be moved to a new cell.  (Stanley Decl. ¶ 5; Arrozola Decl. ¶ 5; Aguilar Decl. ¶ 5.)

25. If the plumbing problem was severe and required immediate attention during non-business hours, it would be reported to the Watch Commander and the cell redlined.  (Stanley Decl. ¶ 5; Arrozola Decl. ¶ 5; Aguilar Decl. ¶ 5.)

26. The correctional officers had no control over a repair request once it was submitted to the Captain's secretary.  (Stanley Decl. ¶ 6; Arrozola Decl. ¶ 6; Aguilar Decl. ¶ 6.)

27. Plaintiff alleges he forgot to rinse his cup one time after using it to empty the sewage from his sink, then drank from it to take a pill and got sick.  (FAC at 15:22–24.)

28. Plaintiff submitted a Health Care Services Request Form ("HCSRF") on February 15, 2019 and medical staff prescribed a three day supply of anti-nausea medication (Phenergan).  (Pl.'s Depo. at 50:5–51:16; RJN Exs. G, H.)

29. Plaintiff alleges the plumbing was fixed on February 27, 2019, and that the Plant Operations Worker said no Work Order had ever been submitted, which caused Plaintiff to be subjected to inhumane living conditions for 31 days.  (FAC at 16:8–12.)

30. A Work Order was issued February 22, 2019, for Cell 123 for repairs to the sink because it would back up when the toilet is flushed and then not drain.  (RJN Ex. D.)

31. The plumbing repair to Cell 123 was completed on February 28, 2019.  (*Id.*)

32. Plaintiff was transferred out of Cell 123 on March 1, 2019.  (RJN Ex. C.)

**C.      Parties' Positions**

Defendants contend that Plaintiff's first and second causes of action for excessive force and failure to intervene are barred by the favorable-termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff pleaded no contest to battery on a peace officer for the same incident for which he is seeking relief under section 1983.  A judgment in Plaintiff's favor in the instant action necessarily implies the invalidity of Plaintiff's criminal conviction, because on the one hand, Plaintiff claims he was the victim of excessive force and failure to intervene when Defendants pepper sprayed him and then forcibly removed him from his cell while he passively tried to comply, but on the other hand, Plaintiff pleaded no contest and was

1   convicted for battery on a peace officer for violently assaulting Defendant Martins and others

2   leading to multiple injuries including Defendant Martins' fractured hand, and these two scenarios

3   cannot coexist.  Plaintiff's cause of action against Defendant Bradford for deliberate indifference

4   to serious medical injury cannot be proved because the fact that Plaintiff disagreed with

5   Defendant Bradford's diagnosis that Plaintiff did not need to go to a mental health crisis bed is

6   not sufficient for Plaintiff to survive summary judgment.  Plaintiff's cause of action for deliberate

7   indifference to conditions of confinement also cannot be proved because Plaintiff does not

8   provide any evidence that these specific Defendants were aware of Plaintiff's plumbing issue and

9   were deliberately indifferent to it, while Defendants followed their protocol to timely report all

10  plumbing problems in Plaintiff's housing unit.  Plaintiff cannot show that these Defendants

11  caused the delay in the repair of his cell, and any delays were caused by other prison staff, for

12  which Defendants cannot be liable.

13          In opposition, Plaintiff contends that his claims are not barred by the favorable

14  termination rule set forth in *Heck*, because he pleaded no contest to misdemeanor willful

15  resisting, and Plaintiff's first cause of action of excessive force occurred while Plaintiff was in a

16  holding cage and Plaintiff was sprayed with 3 cans of MK-9-OC pepper spray even though there

17  was no provocation for this force or amount of force.  Defendants do not mention the force used

18  in Plaintiff's remaining two claims for excessive use of force regarding the excessively tight

19  ankle restraints used to drag Plaintiff into the hallway and Plaintiff being beaten with batons, and

20  these omissions squarely contradict Plaintiff's allegations portraying a needless use of force

21  against an inmate locked in a holding cage and handcuffed.[5]  Summary judgment should not be

22  granted to Defendant Bradford on Plaintiff's claim for deliberate indifference to serious medical

23  needs because Defendant Bradford refused to admit Plaintiff to a mental health crisis bed even

24  after being informed by custody staff that Plaintiff was suicidal and had been observed

25  swallowing two razor blades.  Finally, Plaintiff argues that he has submitted evidence that he

26  submitted a Form 22 to Defendant Aguilar on February 13, 2019 that mentions Defendant

27  ───────────────

[5] The Court notes that there appears to be a page missing from Plaintiff's opposition brief.  (*See* ECF No. 80, pp. 4–
28  5.)  However, it does not appear that the contents of the missing page would alter the findings and recommendations
     set forth herein.

1    Arrozola had been made aware of Plaintiff's plumbing issue two weeks prior and said he

2    submitted a work order, attempted to submit a Form 22 to Defendant Arrozola, who refused to

3    sign, on February 21, 2019 regarding the plumbing issue, and was informed the same date by

4    Defendant Stanley to stop asking because he was "on the shit list."  Plaintiff argues that

5    Defendants were deliberately indifferent to Plaintiff's conditions of confinement and summary

6    judgment should not be granted in their favor.

7          In reply, Defendants reiterate that Plaintiff's causes of action for excessive force and

8    failure to intervene are barred by *Heck v. Humphrey*, because they arise from the same incident,

9    and Plaintiff's distinction between being pepper sprayed and assaulting the officers makes no

10   difference as the events are intertwined.  The crime Plaintiff pleaded no contest to, willful

11   resisting, is what caused the officers to need to use force, and if Plaintiff is allowed to proceed on

12   his Section 1983 claims and he prevails, he will have invalidated his conviction.  Plaintiff next

13   admits that he was immediately sent to an outside hospital for x-rays after he allegedly swallowed

14   razor blades and that he was evaluated by Defendant Bradford for placement in a MHCB but was

15   denied.  Plaintiff thus admits he received prompt attention and medical treatment, but did not like

16   the decision regarding his treatment, and a difference of medical opinion regarding his treatment

17   does not amount to deliberate indifference.  To the extent Plaintiff alleges what Defendants

18   should or should not have done for his medical treatment, Plaintiff is not a medical expert and any

19   medical opinions he provides should be disregarded.  Finally, Plaintiff confirms that Defendants

20   promptly responded to Plaintiff's requests for plumbing repairs, and any delay in plumbing

21   repairs was due to the acts or omissions of third parties and not Defendants.

22         **D.    Analysis**

23                1.    Plaintiff's Claims for Excessive Force and Failure to Intervene

24         The United States Supreme Court held in *Heck v. Humphrey*, 512 U.S. 477 (1994), that a

25   plaintiff may not prevail on a § 1983 claim if doing so "would necessarily imply the invalidity" of

26   plaintiff's conviction arising out of the same underlying facts as those at issue in the civil action

27   "unless the plaintiff can demonstrate that the conviction or sentence has already been

28   invalidated."  *Heck*, 512 U.S. at 487.  Thus, "*Heck* says that 'if a criminal conviction arising out

16

1    of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which

2    section 1983 damages are sought, the 1983 action must be dismissed.'"  *Smith v. City of Hemet*,

3    394 F.3d 689, 695 (9th Cir. 2005) (quoting *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996)).

4    "Consequently, 'the relevant question is whether success in a subsequent § 1983 suit would

5    'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence. . . ."

6    *Beets v. Cty. of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012) (quoting *Smithart*, 79 F.3d at

7    951).  It is the defendant's burden to show that a plaintiff's claim is barred by *Heck*.  *See Sanford

8    v. Motts*, 258 F.3d 1117, 1119 (9th Cir. 2001).

9        "To decide whether success on a section 1983 claim would *necessarily* imply the

10    invalidity of a conviction, we must determine which acts formed the basis for the conviction."

11    *Lemos v. Cty. of Sonoma*, 40 F.4th 1002, 1006 (9th Cir. 2022) (emphasis in original).  "When the

12    conviction is based on a guilty plea, we look at the record to see which acts formed the basis for

13    the plea."  *Id.* (citing *Smith*, 394 F.3d at 696–97 and *Sanford*, 258 F.3d at 1119–20).

14        Based on the evidence in the record, the Court cannot find that Plaintiff's excessive force

15    and failure to intervene claims are *Heck*-barred.  It is undisputed that the Kern County District

16    Attorney filed an information on February 6, 2019, charging Plaintiff with multiple counts of

17    battery on a peace officer, including Count 4 alleging Plaintiff knowingly used force or violence

18    to resist an officer in the performance of his lawful duties causing great bodily harm pursuant to

19    Penal Code section 69, (RJN Ex. E at 6:25–7:15; Pl.'s Depo at 102:21–103:3), and on September

20    26, 2023, Plaintiff pled *nolo contendere*, or "no contest," to an amended Count 4 as a

21    misdemeanor, (RJN Ex. F; Pl.'s Depo. at 103:14–25).[6]  However, the factual basis for Plaintiff's

22    no contest plea is not set forth in the record before the Court.  Defendants include the Kern

23    County Superior Court's September 26, 2023 minute order accepting Plaintiff's no contest plea

24    for an amended Count 4 in support of the *Heck* bar, but the minute order states that "Counsel

---

[6] To the extent Plaintiff argues, or was informed by his criminal defense attorney, that a no contest plea would have
no effect on his civil lawsuit, the Ninth Circuit has "repeatedly found *Heck* to bar § 1983 claims, even where the
plaintiff's prior convictions were the result of guilty or no contest pleas.  *Radwan v. Cty. of Orange*, 519 Fed. Appx.
490, 490–91 (9th Cir. 2013) (citing *Szajer v. City of Los Angeles*, 632 F.3d 607 (9th Cir. 2011); *Whitaker v. Garcetti*,
486 F.3d 572 (9th Cir. 2007); *Guerrero v. Gates*, 442 F.3d 697, 704 (9th Cir. 2006)).

1   stipulate to a factual basis for the plea based on, the offense report and the preliminary hearing

2   transcript."  (RJN Ex. F at 2.)  Defendants did not provide the referenced offense report and

3   preliminary hearing transcript.[7]

4          To the extent Defendants argue that the amended Count 4 to which Plaintiff pled no

5   contest is based on the same factual allegations set forth in the original Count 4 of the February 6,

6   2020 information, this is also not supported by the record.  The original Count 4 states the

7   following:

8          On or about January 19, 2019, David Evan [sic], did willfully and unlawfully
           attempt by means of threats or violence to deter or prevent Correctional Officer
9          John Martins, who were then and there executive officers, from performing a duty
           imposed upon such officer by law, or did knowingly resist by the use of force or
10         violence said executive officer in the performance of his/her duty, in violation of
           Penal Code section 69, a felony.
11

12  (RJN Ex. E at 6–7.)  An enhancement to the original Count 4 states:

13         It is further alleged as to David Evan [sic], that in the attempted commission of
           the above offense he/she personally inflicted great bodily injury upon
14         Correctional Officer John Martins, not an accomplice to the above offense, within
           the meaning of Penal Code section 12022.7(A) and also causing the above offense
15         to be a serious felony within the meaning of Penal Code section 1192.7(C)(8).
16

17  (*Id.* at 7.)  As such, the original Count 4 also does not provide a factual basis that would allow the

18  Court to determine at what point during the January 19, 2019 incident—prior to the deployment

19  of any pepper spray, during Plaintiff's cell extraction, while the leg restraints were applied, while

20  Plaintiff was being beaten with batons in the hallway, etc.—the charged conduct purportedly

21  occurred.  Even assuming the original Count 4 provided this level of factual detail, the September

22  26, 2023 minute order accepting Plaintiff's plea to the amended Count 4 goes on to dismiss

23  certain allegations from the original Count 4, without setting forth any specific facts.[8]  (RJN Ex. F

24

25  [7] The Kern County Superior Court website's Case Information Search function, located at
    https://itsapps.kerncounty.com/iframed/nonCMS/crimindex/crim_index_case_info_cal.asp, confirmed that Case No.
26  DF014639A against David Evans was disposed of on September 26, 2023 on a plea of *nolo contendere* as a
    misdemeanor for "Obstruct/Resist Executive Officer."  However, further case documents do not appear readily
27  available to the public.

28  [8] The Court notes in particular that the minute order does not state whether Defendant Martins is the officer who is
    the subject of amended Count 4, much less the particular acts for which Plaintiff entered his no contest plea.

                                          18

at 3.)  Plaintiff specifically argues that the instant civil action encompasses multiple claims for excessive force against different groups of defendants using different types of force, while Defendants argue that all of Plaintiff's excessive force and failure to intervene claims "arise from the same incident" and "are intertwined."  This argument, unsupported by evidence in the record, is too conclusory to support summary judgment.

Based on the record before the Court, Defendants have failed to carry their burden of showing that any of Plaintiff's excessive force or failure to intervene claims are barred by *Heck*. There is no record of the specific factual basis for Plaintiff's criminal conviction, such that the Court can make any finding that a judgment in Plaintiff's favor in this action would "necessarily imply" the invalidity of his conviction.  Defendants have provided no record of "which acts formed the basis for the plea," *Lemos*, 40 F.4th at 1006, and the mere fact of a conviction for resisting a peace officer under California law does not necessarily preclude an excessive use of force claim pursuant to § 1983.[9]  *See Hooper v. Cty. of San Diego*, 629 F.3d 1127 (9th Cir. 2011) (Fourth Amendment excessive force claim not *Heck*-barred because "[a] holding in Hooper's § 1983 case that the use of the dog was excessive force would not "negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of [Hooper's] attempt to resist it [when she jerked her hand away from Deputy Terrell].");  *Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) ("[A] § 1983 action is not barred under *Heck* unless it is clear from the record that its successful prosecution would *necessarily* imply or demonstrate that the plaintiff's earlier

---

[9] California District Courts have also determined that Eighth Amendment claims under circumstances similar to those presented here are not *Heck*-barred.  *See Green v. Goldy*, 2011 WL 2445872 (E.D. Cal.2011) (prisoner's excessive force claim not *Heck*-barred because two factual predicates exist, one giving rise to the disciplinary conviction, and the other giving rise to a potential civil claim for excessive force); *El–Shaddai v. Wheeler*, 2011 WL 1332044, at *5 (E.D. Cal. Apr. 5, 2011) (finding that an Eighth Amendment excessive use of force claim is not *Heck*-barred because "a judgment for plaintiff on his Eighth Amendment claim would not necessarily imply the invalidity of his disciplinary conviction" for willfully resisting a peace officer); *Gipbsin v. Kernan*, 2011 WL 533701, at *5–*7 (E.D. Cal. Feb.11, 2011) (finding that an Eighth Amendment excessive use of force claim is not *Heck*-barred because success on plaintiff's claim would not necessarily negate his disciplinary conviction on a peace officer or his criminal conviction in state court for battery); *Meadows v. Porter*, 2009 WL 3233902, at *2 (E.D. Cal. Oct. 2, 2009) (finding that an Eighth Amendment excessive use of force claim is not *Heck*-barred because a finding that an officer "responded to the attempted battery with excessive force would not negate any of the elements of attempted battery.  And although the two incidents are closely related and occurred one right after the other, they are separate and distinct events."); *Candler v. Woodford*, 2007 WL 3232435, at *8 (N.D. Cal. Nov. 1, 2007) (finding that an Eighth Amendment excessive use of force claim is not *Heck*-barred because "defendants have not shown that if plaintiff were to prevail on his excessive force claims the validity of the finding that he committed battery on a peace officer necessarily would be implicated").

1    conviction was invalid.").

2        Based on the above, Defendants' assertion that the two factual scenarios set forth by the

3    parties "cannot coexist," rather than establishing that Plaintiff's claims are *Heck*-barred, instead

4    lends support to a finding that there exists a genuine dispute of material fact as to the excessive

5    force and failure to intervene claims in this action.  As explained above, the parties have

6    presented markedly differing versions of the events of January 19, 2019, and Defendants have

7    provided no factual basis for Plaintiff's criminal conviction that lends support to one version of

8    events over the other.  Accordingly, the Court finds that Plaintiff's excessive force and failure to

9    intervene claims are not *Heck*-barred, and there exist genuine disputes of material fact such that

10   summary judgment is not appropriate for these claims.

11                    2.    Plaintiff's Claim for Deliberate Indifference to Serious Medical Needs

12       Based on the undisputed evidence in the record, the Court finds that Defendant Bradford

13   was not deliberately indifferent to Plaintiff's serious medical injury needs.  After Plaintiff was

14   witnessed swallowing the razor blades by the Psych Tech assigned to observe Plaintiff while he

15   was on suicide watch, Plaintiff was, per policy, sent to an outside hospital for x-rays.  UMF 2, 4.

16   Defendant Bradford spoke briefly to Plaintiff while Plaintiff was waiting to be transferred, and

17   again after Plaintiff refused treatment and returned from the hospital.  UMF 4–6.  Defendant

18   Bradford determined that Plaintiff had secondary motives for wanting to be transferred to the

19   MHCB, and observed no sign that Plaintiff had any razor blades in his possession or that he had

20   ingested the razor blades.  UMF 7–8.

21       While Plaintiff disagrees that he had secondary motives for being transferred to the

22   MHCB and asserts that he was observed by a third party swallowing the razor blades and that

23   another doctor later determined that it was appropriate for Plaintiff to be transferred to the

24   MHCB, he has not presented sufficient evidence in the record to create a genuine dispute of

25   material fact regarding this claim.  To the extent Plaintiff personally disagrees with Defendant

26   Bradford's assessment and determination that Plaintiff did not need to be transferred to the

27   MHCB, Plaintiff has not shown that he qualifies as an expert witness in order to be able to opine

28   on the appropriateness and timeliness of the medical care he received.  *See* Fed. R. Evid. 702.  As

Plaintiff is a lay witness, the only admissible evidence he can provide on his own is limited to opinions that are rationally based on his perception; that are helpful to clearly understanding his testimony or to determining a fact in issue; and are not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 such as medical opinions. *See* Fed. R. Evid. 701.

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted). Even assuming that the on-call doctor who later transferred Plaintiff to the MHCB disagreed with Defendant Bradford's initial determination, a difference of opinion between the two medical professionals, without more, is not sufficient to demonstrate that Defendant Bradford's conduct amounted to deliberate indifference to Plaintiff's serious medical needs. Accordingly, the Court finds that summary judgment is appropriate as to Plaintiff's claim against Defendant Bradford for deliberate indifference to Plaintiff's serious medical needs.

        3.    <u>Plaintiff's Claim for Deliberate Indifference to Conditions of Confinement</u>

Relying on the same evidence in the record, the parties present two differing versions of events regarding Plaintiff's claim for deliberate indifference to conditions of confinement related to repairs of the plumbing issue in Plaintiff's cell. It is undisputed that Plaintiff was placed in AdSeg Cell 123 on January 28, 2019, that the sink in Cell 123 would back up and not drain, a work order for Cell 123 for repairs to the sink was issued on February 22, 2019, the plumbing repair was completed on February 27 or February 28, 2019, and Plaintiff was transferred out of Cell 123 on March 1, 2019. UMF 11–12, 29–32. In the month Plaintiff was housed in Cell 123,

1    Plaintiff alleges that he made multiple verbal and written requests to Defendants Arrozola and

2    Aguilar to move him from Cell 123 or that plumbing work orders be submitted, and also

3    submitted a written request to Defendant Stanley that the plumbing be fixed.  UMF 13.  These

4    allegations are supported by CDCR Form 22s dated February 12, 2019 and February 21, 2019, in

5    which Plaintiff states that he had previously notified Defendants Arrozola and Aguilar about the

6    plumbing issue and was told either that work orders had already been submitted and that no

7    plumber had been sent or that the plumber had stated the situation was not an emergency.  UMF

8    14–15.  Defendant Stanley responded to Plaintiff's February 21, 2019 on the same date, writing:

9    "Work order completed/re-submitted today.  Plant ops staff will be here as soon as available."

10   UMF 16.  Defendants do not appear to contest the authenticity of the Form 22s.  (*See* ECF No.

11   81, p. 4.)

12         Although both parties rely on the same documentary evidence, Defendants also present

13   their own declarations, and Plaintiff submits his first amended complaint, all signed under penalty

14   of perjury, in support of different conclusions regarding the timing of and responsibility for the

15   plumbing repair requests.  Defendants state that it was standard operating procedure to

16   communicate a plumbing request to the Captain's secretary, verbally or in writing, the same day a

17   plumbing issue was reported by an inmate, and thereafter they had no control over a repair

18   request once submitted to the Captain's secretary.  UMF 19, 20, 26.  Defendants declare that this

19   is the procedure they followed, and Defendant Stanley ensured everyone under his command

20   followed this procedure.  UMF 21.  Defendants contend that Plaintiff's Form 22s are an

21   admission from Plaintiff that Defendants did submit the work orders requested by Plaintiff, on the

22   same day they were notified of the plumbing issue in Cell 123.  ((ECF No. 81, p. 4.)  On the other

23   hand, Plaintiff alleges that, upon information and belief, when Defendants informed him on

24   multiple occasions that there were no other cells available and that they had submitted work

25   orders to fix the plumbing, they lied to him.  UMF 13.

26         At the summary judgment stage, it is impermissible for the Court to assess the credibility

27   of the witnesses or weigh the evidence.  *Soremekun*, 509 F.3d at 984; *T.W. Elec. Serv., Inc., v.*

28   *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  Thus, in a battle of

1    dueling declarations, the winner may not be declared based upon the number of declarations

2    submitted or the contents therein, so long as the declarations in question are based on personal

3    knowledge of facts admissible in evidence.  While the Court accepts that Defendants'

4    declarations are based on their personal knowledge of facts admissible in evidence, the

5    declarations also leave open questions that cannot be resolved as easily as Defendants contend.

6    All Defendants declare that they followed standard operating procedure under Defendant

7    Stanley's command, and any delay in plumbing repairs was due to the acts or omissions of third

8    parties and not Defendants.  UMF 21; (ECF No. 81, p. 4).  But Defendants fail to address

9    Plaintiff's contention, supported by evidence in the record, that he was informed by Defendants,

10    on multiple occasions, that multiple work orders had been submitted prior to the February 22,

11    2019 work order.  Defendants' reliance on the Form 22s submitted by Plaintiff leaves ambiguous

12    whether Defendants had themselves submitted work orders for Plaintiff's plumbing issue, rather

13    than a repair request (contrary to stated standard operating procedures), or whether they had

14    knowledge that prior work orders had been generated by the Captain's secretary as a result of any

15    repair requests they had submitted.  Defendants' declarations do not specify whether standard

16    operating procedure was followed *in this specific incident*, whether they have any recollection of

17    Plaintiff's specific allegations, or whether it was standard operating procedure to submit multiple

18    repair requests if an inmate repeatedly informed them of a continuing plumbing issue.  Thus,

19    despite Defendants' contentions to the contrary, the evidence in the record is ambiguous as to

20    whether Defendants, or an unknown third party, was ultimately responsible for the submission of

21    a work order (as opposed to a repair request) and whether such a work order was appropriately

22    and timely submitted in response to Plaintiff's repeated complaints about the plumbing issue in

23    his cell.  Defendants' failure to meaningfully address Plaintiff's contentions regarding the

24    credibility of Defendants' statements that they had already submitted work orders on his behalf

25    leaves the record open to a genuine dispute of material fact that cannot be resolved on summary

26    judgment.  As a result, the trier of fact must determine what did or did not happen regarding the

27    incident in question.  Accordingly, the Court finds that Defendants are not entitled to judgment as

28    a matter of law on Plaintiff's deliberate indifference to conditions of confinement claim.

**IV.    Conclusion and Recommendation**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment, (ECF No. 63), be granted in part and denied in part, as follows:

    a.  Defendants' motion for summary judgment be granted as to Plaintiff's claim against Defendant Bradford for deliberate indifference to serious medical needs in violation of the Eighth Amendment for refusing to admit Plaintiff to a suicide crisis bed after Plaintiff swallowed two razor blades with the intent of killing himself; and

    b.  Defendants' motion for summary judgment be denied as to Plaintiff's remaining claims;

2.  Defendant Bradford be dismissed from this action; and

3.  This action proceed on Plaintiff's first amended complaint against: (1) Defendants E. Diaz and Ramirez for excessive force in violation of the Eighth Amendment for spraying Plaintiff with OC spray; (2) Defendants E. Diaz and Ramirez for excessive force in violation of the Eighth Amendment for applying excessively tight ankle restraints and dragging Plaintiff by the chain of the shackles into the hallway; (3) Defendants Martins, E. Diaz, Ramirez, and Marin for excessive force in violation of the Eighth Amendment for beating Plaintiff with batons in the hallway; (4) Defendants A. Aguilar and E. Figueroa for failure to intervene in violation of the Eighth Amendment; and (5) Defendants Stanley, Arrozola, and Aguilar for unconstitutional conditions of confinement in violation of the Eighth Amendment.

* * *

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed**

**fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 5, 2025**                    /s/ *Barbara A. McAuliffe*
                                               UNITED STATES MAGISTRATE JUDGE